IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARWA & CHANGE ADVOCATES, LLP | )<br>)<br>)<br>) |
| *Plaintiff*, | ) Case No.:24-cv-6620<br>)<br>)<br>) Jury Trial Demanded<br>)<br>) Amount Demanded: $1,500,000+ |
| v. | )<br>) District Judge: |
| SMITH LACIEN, LLP,<br>TODD A. SMITH AND<br>JENNER & BLOCK, LLP<br>*Defendants*. | )<br>) Magistrate Judge:<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Arwa & Change Advocates, LLP ("ACA" or "Plaintiff"), complains of Defendants Smith Lacien, LLP ("Lacien"), Todd A. Smith ("Smith") and Jenner & Block LLP ("Jenner") and seeks appropriate judicial relief, including attorney's fees and costs.

## JURISDICTION

1. Plaintiff seeks more than $75,000 in damages, exclusive of interest and costs. Since Plaintiff seek more than $75,000 in damages, plaintiff's members are subjects of a foreign state and defendants' members are citizens of states that are different from plaintiff's members' states of citizenship, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

1

## THE PARTIES

3. ACA is a reputable international law firm based in Nairobi Kenya. It has two partners, Japheth Change ("Change") and Eunice Arwa ("Arwa"), and several associates. All of ACA's lawyers were of good repute and in good standing at all relevant times.

4. Arwa and Change are citizens of Kenya. Lacien is a law firm based in Chicago Illinois. It has two partners, Defendant Smith and Brian Lacien ("Lacien"). Smith and Lacien are, upon information and belief, Illinois citizens. Jenner is a law firm based in Chicago, Illinois. Upon information and belief, none of its partners are citizens of Kenya. Jenner's partners are citizens of various member states of the United States of America.

## FACTUAL BACKGROUND

5. On or about March 10, 2019, Ethiopian Airlines, operating as flight ET302 on a Boeing 737 Max 8 aircraft crashed in Ethiopia shortly after takeoff from Addis Ababa, Ethiopia to Nairobi, Kenya, killing all 157 people on board. Francis Yongi Muturi ("Mr. Muturi") lost his daughter, Florence Wangari Yongi ("Yongi") on the flight.

6. On or about May 2019, Mr. Muturi approached ACA and asked it to represent him in prosecuting a case against the Boeing Company because of the death of his daughter in the crash of Ethiopian Airlines Flight ET 302 on or about March 10, 2019. He did so through and together with another gentleman called Ralph Edward Nguma Nzwii ("Mr. Nguma"), who held himself out as a consultant for the family and claimed to others to be a lawyer.

7. Mr. Muturi and ACA's relationship grew over time, and he sought ACA's counsel in other matters.

8. Since Boeing Company was headquartered in Chicago, Illinois at the time, ACA determined that it was only possible for the suit to be filed in Illinois, especially since other

2

lawsuits had already been filed there. As such, ACA contacted several law firms in Chicago, seeking a co-representation arrangement.

9. On or about on June 3, 2019, Power Rogers & Smith, LLP ("Power Rogers"), a Chicago law firm that has since re-branded as Power Rogers, LLP and ACA entered into a written agreement in which the two law firms were to represent Mr. Muturi "to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302." A true copy of the agreement is attached as (Ex. 1). As Compensation, Mr. Muturi agreed to pay and assigned to the two law firms twenty eight percent (28%) of the gross amount that may be received, whether by trial, settlement, or otherwise.

10. Mr. Muturi also directed and authorized the two law firms to incur reasonable, ordinary, and necessary expenses and costs in the preparation and prosecution of the suit, claim, or cause of action; and agreed to reimburse the two law firms in the actual amount of the costs and expenses so incurred. The reimbursement was to be in addition to the attorney's fees.

11. Mr. Muturi further agreed that both law firms would "share equally in the responsibility for the performance of the services in question." Mr. Muturi further understood, agreed, and consented to the fact that any attorney's fees realized would "be shared between POWER ROGERS & SMITH, LLP and ARWA & CHANGE ADVOCATES LLP; and that, of the total attorneys' fee, POWER ROGERS & SMITH, LLP" would "receive fifty (50%) percent and "ARWA & CHANGE ADVOCATES LLP" would receive fifty "(50%) percent."

12. On or about June 12, 2019, POWER ROGERS & SMITH, LLP, with input from ACA, filed a lawsuit as Case No. 19-cv-3927 on Mr. Muturi's behalf in the United States District Court

3

for the Northern District of Illinois ("Wrongful Death Case"). That case was consolidated with others under Case No. 19-cv-2170 and captioned as In Re Ethiopian Airlines Flight ET 302 Crash.

13. On or about July 14, 2020, some issues arose between Mr. Smith and Power Rogers, the exact details of which Plaintiff is currently unware. As a result, some attorneys from Power Rogers split and formed a new law firm called Smith Lacien, LLP ("Lacien"). Consequently Mr. Muturi entered into a new written agreement, which discharged Power Rogers, but retained ACA and the new law firm, Lacien, under the same terms of representation as the prior agreement between Power Rogers, ACA and Mr. Muturi.

14. On or about July 17, 2020, Mr. Muturi, Lacien and ACA executed a new written agreement ("July 17, 2020 Agreement"). A true copy of the agreement is attached as (Ex. 2). Like the prior agreement, the July 17, 2020 agreement Mr. Muturi entered into with Lacien and ACA provided that the two law firms were to represent Mr. Muturi "to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302."

15. As Compensation, Mr. Muturi agreed to pay and assigned to the two law firms twenty eight percent (28%) of the gross amount that may be received, whether by trial, settlement, or otherwise. *Id*. Mr. Muturi also directed and authorized the two law firms to incur reasonable, ordinary, and necessary expenses and costs in the preparation and prosecution of the suit, claim, or cause of action; and agreed to reimburse the two law firms in the actual amount of the costs and expenses so incurred. The reimbursement was to be in addition to the attorney's fees.

16. Mr. Muturi further agreed that both law firms would "share equally in the responsibility for the performance of the services in question." Mr. Muturi further understood, agreed, and consented to the fact that any attorney's fees realized would "be shared between SMITH LACIEN, LLP and ARWA & CHANGE ADVOCATES LLP; and that, of the total attorneys' fee, SMITH LACIEN, LLP" would "receive fifty (50%) percent and "ARWA & CHANGE ADVOCATES LLP" would receive "(50%) percent."

17. From June 9, 2019 until about February 14, 2022, ACA represented Mr. Muturi completely and diligently. Specifically, the firm accomplished the following:

    a. Collected facts from Mr. Muturi and other family members, friends and associates and analyzed those facts in the context of the claims that Mr. Muturi could have, or had, including facts related to damages and passed them along to Power Rogers and later, Smith Lacien for the prosecution of the lawsuit;

    b. conducted extensive legal research into relevant applicable laws across various jurisdictions that had a direct bearing on the matter as well as all other matters that could have conceivably had any impact upon the Plaintiff's ability to recover;

    c. Authored and exchanged various legal opinions that were crucial to recovery of compensation;

    d. Presented and explained various proposed and actual pleadings to Mr. Muturi;

    e. Presented and explained various discovery requests to Mr. Muturi and helped him formulate responses;

    f. Engaged in numerous meetings and discussions with co-counsel as well as Plaintiff and Plaintiff's family members;

g. Engaged in extensive settlement discussions with co-counsel and mediation with Boeing that resulted in a substantial offer.

18. On or about January 14, 2021, ACA, representing Mr. Muturi, participated in a Zoom mediation session with Boeing before Cook County Circuit Court Retired Chief Judge Donald O'Connell. The session included attorneys from Lacien; specifically, Todd Smith and Brian Lacien; as well as attorneys from Boeing Company and attorneys from ACA, specifically, Change, Isaac Odhiambo. During the mediation, Mr. Muturi's last demand was $23 million, while Boeing's last offer was $5 million. The case did not settle on that day.

19. By February 14, 2022, ACA had expended more than 2,470 hours in the case and incurred expenses related to its representation of Mr. Muturi in connection with the case.

20. On or about February 2023, the Wrongful Death Case settled for an amount that ACA does not currently know, but that it believes exceeds 6 million U.S. dollars. Smith and Lacien have kept at least 28 percent of the settlement amount to themselves.

**COUNT ONE – AGAINST SMITH & LACIEN LLP**
**BREACH OF IMPLIED CONTRACT TO SHARE FEES**

21. Plaintiff re-alleges and re-asserts paragraphs 1-20 as if fully set forth herein.

22. On or about July 17, 2020, an implied contract arose between Arwa & Change Advocates and Smith Lacien, LLP when they entered into a written agreement to jointly represent Mr. Muturi to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302, and to share equally in the responsibility for the performance of the services in question, on a contingent fee basis, and to share twenty eight percent (28%) of the gross amount that may be received, whether by trial,

6

settlement, or otherwise, with each law firm receiving fifty percent of the twenty eight percent ("Implied Contract").

23. Mr. Muturi consented in writing to the agreement for ACA and Lacien to share fees.

24. The two law firms both represented Mr. Muturi until about February 14, 2022, and were able to generate an offer of at least $5 million from Boeing in the Wrongful Death Case. Mr. Muturi was aware of ACA's contributions to the case because ACA met with him regularly.

25. ACA incurred consequential damages that were contemplated by the parties at the time they entered into the written agreement.

26. The Wrongful Death Case finally settled in February 2023 at an amount that exceeds $6 million.

27. Lacien breached is duties under the Implied Contract when it retained at least twenty eight percent of the gross settlement amount and refused to pay ACA its share of fees from the Wrongful Death Case settlement.

**WHEREFORE**, Plaintiff, Arwa & Change, LLP, prays that this Court enter judgment on its behalf and against Smith Lacien, LLP for actual and consequential damages for breach of the Implied Contract.

### COUNT TWO – AGAINST SMITH & LACIEN LLP
### BREACH OF FIDUCIARY DUTY

28. Plaintiff re-alleges and re-asserts paragraphs 1-20 as if fully set forth herein.

29. On or about July 17, 2020, a joint venture or special partnership arose between Arwa & Change Advocates and Smith Lacien, LLP when they entered into a written agreement to jointly represent Mr. Muturi to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302, and to

share equally in the responsibility for the performance of the services in question, on a contingent fee basis.

30. Separate and apart from the joint venture or special partnership, on or about June 25, 2021, ACA entered into a written agreement ("Comp Fund Agreement") with Mr. Muturi so that ACA could represent him to enable him to obtain his share of funds from a Compensation Fund that Boeing had established. A true copy of the agreement is attached as (Ex. 3). The guidelines for the Compensation Fund authorized attorneys to charge fees related to any assistance provided to clients in order to promote a more efficient, speedier, and accurate submission of all necessary documents as well as the safe and secure transfer of the funds. Mr. Muturi signed the written agreement in Nakuru, Kenya on or about June 25, 2021 in front of Change and other witnesses, including a lawyer named Isaac Odhiambo. ACA fully performed its obligations under the Comp Fund Agreement and safely delivered Mr. Muturi's share of funds to him on or about August 25, 2021.

31. As a result of the joint venture or special partnership between them, Smith Lacien, LLP owed Arwa & Change Advocates, LLP, a fiduciary duty. In breach of, and in violation of that fiduciary duty, Smith Lacien, LLP, through Todd A. Smith and/or others:

    a. Failed to share all information with ACA that was relevant to the representation of Mr. Muturi in the prosecution of the Wrongful Death Case;

    b. Falsely stated to Mr. Muturi that ACA had agreed to help Mr. Muturi obtain funds from a Compensation Fund that Boeing had established on a *pro bono* basis, when in fact, ACA had made no such representation or agreement;

    c. Falsely stated to Mr. Muturi that ACA had deceived him, when in fact, ACA had not deceived Mr. Muturi;

8

d. Falsely stated to Mr. Muturi that ACA had engaged in misconduct, when in fact, ACA had not engaged in any misconduct;

e. Falsely stated to Mr. Muturi that ACA had allegedly agreed not to receive its attorneys' fees from the Wrongful Death Case, when ACA, had, in fact not made any such agreement or representation;

f. Collected at least 28 % of the gross settlement amount from Boeing in attorneys' fees from the Wrongful Death Case, but failed to give Arwa & Change 50% or any other amount of its share;

g. Entered into a separate representation agreement with a non-lawyer, Mr. Nguma, with respect to the Wrongful Death Case without ACA's knowledge or approval and in violation of applicable Rules of Professional Conduct;

h. Despite admitting in a March 14, 2022 letter to the Attorney Registration and Disciplinary Commission ("ARDC") that he did not know whether Mr. Muturi had signed the Comp Fund Agreement, and that he was not present in Nakuru, Kenya on June 25, 2021 and did not know the substance of Mr. Muturi and ACA's discussions or agreement, wrote a letter to the ARDC falsely accusing Mr. Change of retaining legal fees from the Comp Fund Agreement without permission from Mr. Muturi, so that it could deprive ACA of its fees in the Wrongful Death Case.

32. On or about February 14, 2022, Mr. Muturi, who had previously informed ACA that he did not have an email address, sent an email to ACA terminating its services because he claimed he needed a more professional legal service.

33. Upon information and belief, Lacien caused Mr. Muturi, or another third party to compose and send the February 14, 2022 email around February 12, 2022 after it learned that

9

ACA had been paid in accordance with the Comp Fund Agreement.

34. In addition to causing the February 14, 2022 email to be sent to ACA, Lacien made false statements to the ARDC and Kenyan police and law enforcement officials, that falsely accused Mr. Change of improperly keeping fees that ACA had earned based on its June 25, 2021 agreement with Mr. Muturi related to the Boeing Compensation Fund. These false statements caused ACA to incur substantial legal fees and expenses to defend its good name and reputation.

35. As a direct or proximate result of Defendant Smith Lacien, LLP's conduct, Arwa & Change, LLP suffered monetary damages in excess of $1,500,000.

**WHEREFORE**, Plaintiff, Arwa & Change, LLP, prays that this Court enter judgment on its behalf and against Smith Lacien, LLP for actual, compensatory and punitive damages for breach of fiduciary duty.

**COUNT THREE – AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

36. Plaintiff re-alleges and re-asserts paragraphs 1-20 as if fully set forth herein.

37. Mr. Muturi was an ACA client before Smith and Lacien came into the picture. Without ACA, Lacien and Smith would have never met or represented Mr. Muturi.

38. On or about February 12, 2022, ACA had an attorney-client relationship with Mr. Muturi for representation in the Wrongful Death Case from which it expected to earn a substantial amount of legal fees. In fact, Boeing had already offered $5 million to settle the case, and ACA would have been entitled to at least half of twenty eight percent of that amount, or 14 percent of that amount. Smith and Lacien were aware of the relationship and ACA's business expectancy to earn substantial legal fees from its services.

39. Smith and Lacien purposefully interfered with ACA's attorney-client relationship with Mr. Muturi and induced Mr. Muturi to discharge ACA as his attorney through one or more

conversations that were based on false information, and, on February 14, 2022, Mr. Muturi did in fact discharge ACA as his attorney. Smith and Lacien's purposeful interference with ACA's attorney-client relationship with Mr. Muturi prevented ACA's legitimate expectancy of earning substantial legal fees from the Wrongful Death Case from ripening into a valid business relationship.

40. As a direct or proximate result of Smith and Lacien's conduct, ACA suffered damages, including loss of substantial attorney's fees and unreimbursed expenses.

**WHEREFORE,** Plaintiff, Arwa & Change, LLP, prays that this Court enter judgment on its behalf and against Defendants Todd A. Smith and Smith Lacien, LLP for actual, compensatory and punitive damages for tortious interference with prospective economic advantage.

## COUNT FOUR – AGAINST JENNER & BLOCK LLP
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

41. Plaintiff re-alleges and re-asserts paragraphs 1-20 as if fully set forth herein.

42. On or about February 12, 2022, ACA had an attorney-client relationship with Mr. Muturi for representation in the Wrongful Death Case from which it expected to earn a substantial amount of legal fees. In fact, Boeing had already offered $5 million to settle the case, and ACA would have been entitled to at least half of twenty eight percent of that amount, or 14 percent of that amount. Furthermore, ACA had an attorney-client relationship with Mr. Muturi for representation in other matters, including providing advice on investment strategies of the money that Mr. Muturi had received or would later receive from Boeing.

43. Around the same time, Lacien hired Jenner to help it manage its relationship with ACA and Mr. Muturi. As a result, Jenner, through its employees or agents, including John Storino, became aware of the relationship and ACA's business expectancy of earning substantial legal

fees from its services in the Wrongful Death Case and other matters for which ACA advised Mr. Muturi.

44. Jenner, in conjunction with Lacien, purposefully interfered with ACA's attorney-client relationship with Mr. Muturi as it relates to the lawsuit and induced Mr. Muturi to discharge ACA as his attorney through one or more conversations, either directly or indirectly with Mr. Muturi that were based on false information, and, on or about February 14, 2022, Mr. Muturi did in fact discharge ACA as his attorney. Jenner's purposeful interference with ACA's attorney-client relationship with Mr. Muturi prevented ACA's legitimate expectancy from ripening into a valid business relationship.

45. Jenner, in conjunction with Lacien, purposefully interfered with ACA's attorney-client relationship with Mr. Muturi as it relates to other matters outside of the lawsuit sometime after February 14, 2022 and induced Mr. Muturi to not conduct further business with ACA, including providing advise on how to invest funds received from Boeing from the settlement of the lawsuit. Jenner's purposeful interference with ACA's business relationship with Mr. Muturi prevented ACA's legitimate expectancy from ripening into a valid business relationship.

46. Jenner's acts included manufacturing an allegation that ACA had conducted misconduct by entering into a written fee agreement with Mr. Muturi so that ACA could help him to obtain money from a Compensation Fund that Boeing had established, that was completely separate from the scope of the July 17, 2020 Agreement.

47. Jenner's acts included drafting a release document that purported to show, falsely, that ACA had released its claims to attorneys' fees in the Wrongful Death Case, and obtaining a forged signature and corporate stamp on the document without ACA's knowledge, awareness, participation or permission.

48. As a direct or proximate result of Jenner's conduct, ACA suffered damages, including loss of substantial attorney's fees and unreimbursed expenses.

**WHEREFORE,** Plaintiff, Arwa & Change, LLP, prays that this Court enter judgment on its behalf and against Jenner & Block, LLP for actual, compensatory and punitive damages for tortious interference with prospective economic advantage.

### COUNT FIVE – AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
### QUANTUM MERUIT

49. Plaintiff re-alleges and re-asserts paragraphs 1-20 as if fully set forth herein.

50. On or about July 17, 2020, Arwa & Change Advocates and Smith Lacien, LLP entered into a written agreement to jointly represent Mr. Muturi to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302, and to share equally in the responsibility for the performance of the services in question, on a contingent fee basis, and to share twenty eight percent (28%) of the gross amount that may be received, whether by trial, settlement, or otherwise, with each law firm receiving fifty percent of the twenty eight percent ("Wrongful Death Representation Agreement").

51. Mr. Muturi assigned twenty eight percent of the gross settlement amount to ACA and Lacien as legal fees.

52. The two law firms both represented Mr. Muturi until about February 14, 2022, and were able to generate an offer of at least $5 million from Boeing in the Wrongful Death Case.

53. The Wrongful Death Case finally settled in February 2023 at an amount that exceeds $6 million.

54. ACA performed and provided legal services that benefited Smith and Lacien. ACA performed and provided the legal services non-gratuitously. Smith and Lacien accepted ACA's legal services. Smith and Lacien induced Mr. Muturi to breach the Wrongful Death Representation Agreement, and Mr. Muturi breached the agreement on or about February 14, 2022.

55. Smith and Lacien has wrongfully retained the entire twenty eight percent of the gross settlement amount from the Wrongful Death Case, and has refused to provide ACA with its rightful share.

**WHEREFORE**, Plaintiff, Arwa & Change, LLP, prays that this Court enter judgment on its behalf and against Todd A. Smith and Smith Lacien, LLP for actual damages under quantum meruit theory.

### COUNT SIX – AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
### ADJUDICATION OF EQUITABLE LIEN

56. Plaintiff re-alleges and re-asserts paragraphs 1-20 as if fully set forth herein.

57. On or about July 17, 2020, Arwa & Change Advocates and Smith Lacien, LLP entered into a written agreement to jointly represent Mr. Muturi to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302, and to share equally in the responsibility for the performance of the services in question, on a contingent fee basis, and to share twenty eight percent (28%) of the gross amount that may be received, whether by trial, settlement, or otherwise, with each law firm receiving fifty percent of the twenty eight percent ("Wrongful Death Representation Agreement").

58. Mr. Muturi agreed to pay, and assigned twenty eight percent of the gross settlement amount that may be received, whether by trial, settlement or otherwise, from the prosecution of the Wrongful Death Case to ACA and Lacien as legal fees.

59. The two law firms both represented Mr. Muturi until about February 14, 2022, and were able to generate an offer of at least $5 million from Boeing in the Wrongful Death Case.

60. The Wrongful Death Case finally settled in February 2023 at an amount that exceeds $6 million.

61. ACA performed and provided legal services that benefited Smith and Lacien. ACA performed and provided the legal services non-gratuitously. Smith and Lacien accepted ACA's legal services. Smith and Lacien induced Mr. Muturi to breach the Wrongful Death Representation Agreement, and Mr. Muturi breached the agreement on or about February 14, 2022.

62. Smith and Lacien has wrongfully retained the entire twenty eight percent of the gross settlement amount from the Wrongful Death Case, and has refused to provide ACA with its rightful share.

63. This Court is empowered to adjudicate ACA's equitable lien for services that it provided to Mr. Muturi, and to enter an order directing Smith and Lacien to provide it with an equitable share of its legal fees.

**WHEREFORE**, Plaintiff, Arwa & Change, LLP, prays that this Court adjudicate its equitable lien and enter judgment on its behalf and against Todd A. Smith and Smith Lacien, LLP in an amount that is equitable and just.

## JURY DEMAND

64. Plaintiffs hereby demand a trial by jury of twelve pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all triable issues.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Arwa & Change Advocates, LLP, prays that this Court enter judgment on its behalf and against Defendants Todd A. Smith, Smith Lacien, LLP and/or Jenner & Block LLP as follows:

A. That Plaintiff, Arwa & Change Advocates, LLP be awarded actual, compensatory and consequential damages for the implied breach of contract claim.

B. That Plaintiff Arwa & Change Advocates, LLP be awarded actual, compensatory and punitive damages for the breach of fiduciary duty claim.

C. That Plaintiff Arwa & Change Advocates, LLP be awarded actual, compensatory and punitive damages for the tortious interference with prospective economic advantage claim against Todd A. Smith and Smith Lacien, LLP, jointly and severally.

D. That Plaintiff Arwa & Change Advocates, LLP be awarded actual, compensatory and punitive damages for the tortious interference with prospective economic advantage claim against Jenner & Block, LLP.

E. That Plaintiff Arwa & Change Advocates, LLP be awarded actual damages for the quantum meruit claim against Todd A. Smith and Smith Lacien, LLP, jointly and severally.

F. That Plaintiff Arwa & Change Advocates, LLP be awarded appropriate relief on its claim for adjudication of equitable lien against Todd A. Smith and Smith Lacien, LLP, jointly and severally.

G. That Arwa & Change Advocates, LLP be awarded reasonable attorney's fees and costs as to each appropriate claim.

H. That Arwa & Change Advocates, LLP be awarded any and all appropriate relief under the

circumstances.

                Respectfully Submitted

                /s/ Eric Onyango
                Eric Onyango
                Prime Legal, LLC
                222 North Columbus Drive #1507
                Chicago, IL 60601
                312-315-8568
                Counsel for Arwa & Change Advocates, LLP