# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARWA & CHANGE ADVOCATES, LLP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No: 1:24-cv-06620 |
| SMITH LACIEN LLP, JENNER & BLOCK LLP, TODD A. SMITH, and JOHN R. STORINO | ) ) Honorable Georgia N. Alexakis ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF JENNER & BLOCK'S
AND JOHN STORINO'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Michael T. Brody
Grace C. Signorelli-Cassady
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com
gsignorelli-cassady@jenner.com

*Counsel for Defendants Jenner & Block LLP
and John R. Storino*

Jenner & Block LLP and John R. Storino (collectively, "Jenner") move to dismiss Arwa & Change Advocates, LLP's ("ACA") Amended Complaint (the "Complaint"). The two counts that pertain to Jenner are afterthoughts, are legally and factually deficient, and should be dismissed.

The underlying dispute between ACA and Smith LaCien is over a legal fee. Their mutual client, the Yongi family, terminated ACA as counsel, depriving ACA of any chance to recover a contingent fee from litigation about a Boeing aircraft crash. Here, ACA does not sue the Yongis, who fired ACA. Instead, ACA sued Smith LaCien on a variety of theories (all of which are deficient, as Smith LaCien points out in its motion).

As an apparent afterthought, ACA sued Jenner, whose only role in this controversy was to counsel its client, Smith LaCien, regarding the dispute with ACA. Jenner had nothing to do with the underlying contingent fee contract and the lawsuit against Boeing, other than to have appeared before Judge Alonso on behalf of its client, Smith LaCien, to oppose ACA's request to disclose the settlement agreement. Upon Jenner's showing that this Court lacked diversity jurisdiction to hear ACA's original complaint, Dkt. 19, ACA's next afterthought was to add a federal race discrimination claim in a transparent but improper effort to keep this case in federal court.

ACA's new Complaint is as defective as its original one for several reasons. First, the race discrimination count fails to state a claim as a matter of law. Second, this Court still lacks diversity jurisdiction and, without the federal claim, should decline to exercise supplemental jurisdiction over the Complaint's state law claims. If the Court considers the state law claims, it should dismiss the count against Jenner for failure to state a claim.

## BACKGROUND

Ethiopian Airlines Flight ET 302, operating a Boeing aircraft, crashed on March 10, 2019, killing all passengers on board, including Florence Wangari Yongi. Compl. ¶ 8. The Yongi Estate

retained two law firms to file a wrongful death lawsuit against Boeing: Kenyan firm ACA and Chicago-based lawyer Todd Smith, now a partner at Smith LaCien. Compl. ¶¶ 9, 12. The Yongi Estate agreed to reimburse the lawyers for costs and expenses and to pay a contingent fee based on a percentage of the amount recovered. *Id.* ¶¶ 12-14; Compl. Ex. 1.

On February 14, 2022, while the wrongful death lawsuit was ongoing, Francis Yongi Muturi, the administrator of the Yongi Estate, terminated ACA's services. Compl. ¶ 55. Under Illinois law, a client may terminate a lawyer "at any time with or without cause" and, if the lawyer is retained on a contingency fee basis, "the contingency term … is no longer operative." *In re Est. of Callahan*, 578 N.E.2d 985, 987-88 (Ill. 1991). ACA does not allege it did any further work on behalf of the Yongi Estate following this February 2022 termination.

Smith LaCien hired Jenner as its legal counsel to, in Plaintiff's telling, "help" Smith LaCien "manage its relationship with ACA and Mr. Muturi" related to the Yongi Estate. Compl. ¶ 54. While the specifics of Jenner's work are privileged, for the purpose of this Motion, Jenner served as counsel for the Smith LaCien firm and Jenner's actions were taken within the scope of this representation. ACA does not allege otherwise. *See generally id.* ¶¶ 51-59.

After the Yongi Estate terminated ACA as legal counsel in February 2022, the Yongi Estate continued its lawsuit against Boeing, with Smith LaCien as its counsel. *See* Compl. ¶¶ 23, 55. Over a year later, on February 28, 2023, Boeing and the Yongi Estate, represented by Smith LaCien, entered into a confidential settlement. Compl. ¶ 23. Judge Alonso approved the settlement. Order, *In re: Ethiopian Airlines Flight ET 302 Crash*, Case No. 1:19-cv-02170 (N.D. Ill. Mar. 15, 2023), ECF No. 1661 (hereinafter "*Flight ET 302 Crash*").

ACA was not provided with details of the *confidential* settlement, given the Yongi Estate's termination of ACA as its legal counsel a year earlier. *See* Compl. ¶¶ 23, 55. When it learned of

the resolution, ACA sought to recover some of the proceeds for itself. In the action before Judge Alonso, ACA asked the Court to give ACA a copy of the confidential settlement, or require a declaration regarding the settlement "proceeds," so ACA could demand payment. ACA Mot. for Relief, *Flight ET 302 Crash* (Apr. 18, 2024), ECF No. 2043. Jenner appeared in the wrongful death case on behalf of non-party Smith LaCien and filed an objection to ACA's request, as did Boeing. Resp. Brs., *Flight ET 302 Crash* (May 9, 2024), ECF Nos. 2073-74. Judge Alonso denied ACA's request. Order, *Flight ET 302 Crash* (June 25, 2024), ECF No. 2165.

ACA then sued Smith LaCien, Mr. Smith, and Jenner. As to Jenner, ACA alleges that in the course of representing Smith LaCien, Jenner "purposefully interfered with ACA's attorney-client relationship with Mr. Muturi" in two ways: (i) by "induc[ing]" Mr. Muturi to terminate ACA, which prevented ACA from receiving a fee from the later Boeing settlement, and (ii) by "induc[ing] Mr. Muturi to not conduct further business with ACA," such as obtaining advice on "how to invest" Boeing settlement funds. Compl. ¶¶ 55-56.

Jenner moved to dismiss the original complaint and demonstrated the allegations of diversity jurisdiction were insufficient: Jenner has partners who are citizens of the United Kingdom, and thus there were foreign citizens on both sides of the case, defeating foreign citizen diversity jurisdiction. Dkts. 18, 19. ACA now attempts to cure this defect by asserting—for the *first* time—that racial animus motivated Defendants' actions, creating a federal claim under 42 U.S.C. § 1981. Compl. ¶¶ 75-84. That claim, like the others, is defective. The breakdown of ACA's relationship with the Yongi Estate was triggered by ACA's actions, not by Mr. Smith, Smith LaCien, or Jenner's legal representation, and certainly not by race discrimination.

**ARGUMENT**

The Complaint should be dismissed. First, Count VII, the basis for federal question

3

jurisdiction, is insufficient as a matter of law. Second, with diversity jurisdiction still lacking, the remaining state law counts (only one of which, Count IV, concerns Jenner) lack an independent jurisdictional basis and this Court should decline to exercise supplemental jurisdiction over them. Should the Court reach the merits of Count IV, the Court should dismiss the claim on the merits—Jenner's actions are absolutely privileged, and the Complaint does not allege a claim upon which relief may be granted.

I.     **COUNT VII FAILES TO STATE A CLAIM UNDER SECTION 1981.**

In Count VII, ACA asserts a claim against *all* Defendants under 42 U.S.C. § 1981. *See* Compl. ¶¶ 75-84. As relevant here, Section 1981 mandates that all "persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

A complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include "enough facts to state a claim to relief that is plausible on its face," such that it "nudge[s] [] claims across the line from conceivable to plausible." *Id.* at 570. "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1939 (2009).

A Section 1981 claim has three elements: (1) the plaintiff is a member of a racial minority;

(2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerns the making or enforcement of a contract. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). The intent requirement is strict: a Section 1981 claim must allege "purposeful discrimination." *General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982). A plaintiff "must initially plead and ultimately prove that, *but for race*, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added).

ACA's allegations against Jenner are thin and conclusory. ACA asserts Jenner violated ACA's right to enforce its contract to share fees with Smith LaCien because Mr. Change was "subjected [] to humiliation when ACA attempted to collect its fees." Compl. ¶ 81. The complaint alleges no specifics. ACA also states Mr. Storino said Mr. Change "is a criminal" at a time when Mr. Change had been charged with, but not convicted of, a crime. Compl. ¶ 81. Significantly, ACA does *not* allege Jenner made any reference to race. Plaintiff also asserts, without more, that Jenner "did not subject other similarly situated white persons or entities to similar mistreatment." *Id.* ACA's allegation that "Defendants violated ACA's right to enforce [its] contract ... by failing to pay it its rightfully earned fees," *id.* ¶ 82, cannot refer to Jenner, which had no contracts with ACA, played no role in contracting with ACA, and had no duty to pay ACA anything.

These allegations fail to state a Section 1981 claim. First, Plaintiff has not alleged that Jenner *purposefully* discriminated against Mr. Change because of his race beyond the general fact that Mr. Change is Black and Mr. Storino is white. *Id.* ¶¶ 78-79. While racial disparity may satisfy the first element, it does not satisfy the other two elements of the claim. Section 1981's "but for" test requires more. *Comcast*, 589 U.S. at 341; *General Bldg.*, 458 U.S. at 391.

ACA's assertion that it was treated less favorably than a similarly situated white person,

5

absent additional detail, fails to demonstrate *intentional* discrimination. *O'Neill v. Gourmet Sys. of Minn., Inc.*, 219 F.R.D. 445, 455 (W.D. Wis. 2002) (dismissing a claim under § 1981 where plaintiffs only alleged disparate impact given defendant's actions and thus failed to prove discriminatory intent); *cf. Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 681 (N.D. Ill. 2022) (holding that plaintiffs' allegations were plausible because they supported their "because of race" allegations with specifics). Likewise, "stray" remarks or comments are inadequate to demonstrate racial animus, even if race were a "motivating factor," which is not alleged here. *Mir v. State Farm Mut. Auto. Ins. Co.*, 847 F. App'x 347, 350 (7th Cir. 2021) (allegations that defendant "'kn[ew] about [his] East-Indian/Pakistani race' and, 'motivated by discrimination against him,' denied him" insurance benefits, without more, were insufficient to "'nudge [the] claims across the line from conceivable to plausible.'") (internal citations omitted); *Comcast*, 589 U.S. at 332; *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806, n.7 (7th Cir. 1999) (finding that, even if insensitive, stray remarks did not establish discriminatory animus in action for race discrimination in the making and enforcing of a contract).

ACA has not alleged facts showing that *but for* Mr. Change's race, ACA could enforce its contract, and the facts that ACA pleads undermine that conclusion. The decision to terminate ACA in February 2022 was made by Mr. Muturi, ACA's former client, who is African. Compl. ¶ 38. By April 2024, when ACA alleges Jenner engaged in discriminatory conduct, the termination decision had been made and ACA's role in the Yongi case was over. *Id.* ¶ 81. At that time, ACA had begun to pursue its fee claim by intervening in the settled case between Boeing and the Yongi Estate. ACA Mot. for Relief, *Flight ET 302 Crash* (Apr. 18, 2024), ECF No. 2043. Even taking ACA's allegations as true, Jenner's alleged discriminatory conduct could not have affected ACA's making or enforcement of a contract. *See Randle v. LaSalle Telecomms., Inc.*, No. 86 C 3290, 1987 WL

6

8192, at * 2 (N.D. Ill. Mar. 13, 1987) (finding that one is liable for interfering with a contract between third parties when acting "pursuant to a policy of race discrimination" and "forc[ing]" one party to terminate the contract).

Second, ACA has not alleged that anything Jenner did affected ACA's right to enforce its own contracts. A plaintiff must allege intentional discrimination harmed its contract rights. *See* 42 U.S.C. § 1981(a)-(b); *General Bldg.*, 458 U.S. at 391. Yet ACA *has* attempted to pursue its contract claim in litigation related to the Boeing settlement,[1] with the Yongi Estate,[2] and in this very lawsuit, in which ACA is seeking to enforce an alleged contract with Smith LaCien. ACA has not suggested that Jenner did anything to close the courthouse doors or otherwise prevent enforcement of ACA's contracts. Without "alleging some damage resulting from the defendant's actions," ACA has "failed to state a claim under [S]ection 1981." *Randle*, 1987 WL 8192, at * 2. As the Supreme Court concluded, "one cannot seriously 'contend that the grant of the other rights enumerated in § 1981 ... accomplishes anything other than the removal of *legal* disabilities to sue, be a party, testify or enforce a contract. Indeed, it is impossible to give such language any other meaning.'" *Patterson v. McLean Credit Union*, 491 U.S. 164, 177-78 (1989) (holding that the prohibition of racial discrimination in the enforcement of contracts does not extend beyond conduct which impairs the ability to "enforce through legal process [one's] established contract rights").

Finally, this is the *first* time in the course of this long-running dispute that Plaintiff has asserted race was even relevant, which begs the question why ACA raised such a claim only after Jenner filed a motion to dismiss Plaintiff's original complaint for lack of diversity jurisdiction.

---

[1] For example, after Boeing and the Yongi Estate entered into a confidential settlement agreement, ACA sought to recover some of the proceeds for itself by requesting that the court provide ACA with a copy of the confidential settlement, or require a declaration regarding the settlement "proceeds," so ACA could demand payment. ACA Mot. for Relief, *Flight ET 302 Crash,* (Mar. 15, 2023), ECF No. 2043.

[2] Jenner understands that ACA has pursued litigation against Mr. Muturi and/or the Yongi Estate in Kenya.

7

ACA's timing suggests it added this claim as an afterthought to invent federal question jurisdiction.

Plaintiff has failed to allege facts sufficient to state a claim under Section 1981 and the Court should dismiss Count VII of Plaintiff's Amended Complaint.

## II. THE COURT SHOULD DECLINE TO HEAR OR SHOULD DISMISS COUNT IV.

ACA's original complaint invoked the Court's diversity jurisdiction. *See* Dkt. 1. Jenner's prior motion made clear that diversity jurisdiction did not exist. *See* Dkts. 18, 19. That remains true. Trying to salvage the Court's jurisdiction, ACA's Complaint now brings a defective federal race discrimination claim, which the Court should dismiss. With only state law claims remaining, the Court should decline to exercise its supplemental jurisdiction. Even if the Court reaches the merits of the state law claims, the Court should nevertheless dismiss ACA's single tortious interference claim against Jenner (Count IV) with prejudice.

### A. The Court Lacks Diversity Jurisdiction.

ACA alleges there is diversity because it is a citizen of Kenya, while Jenner's partnership has offices in the United States. Compl. ¶¶ 4-5. This allegation is incorrect. Because Jenner is also a foreign citizen by virtue of its foreign partners, complete diversity is lacking.

Jenner's partnership includes partners who live in the United Kingdom. *See* Dkt. 19-1 (Aff. of N. George). Jenner's United Kingdom-based partners are, for diversity purposes, citizens of the United Kingdom. *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) (citizenship of "natural persons," such as Jenner's partners, is determined by where "they reside or—to be more precise—are 'domiciled.'"); 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed. 2021) (a person's domicile is "the place where that individual has a true, fixed home," the place where they intend to return, even when they spend time away).

As a limited liability partnership, Jenner derives its citizenship from its partners. *See, e.g.*,

*Page*, 2 F.4th at 634, 635. Thus, the citizenship of Jenner's United Kingdom-domiciled partners is attributed to Jenner, and Jenner is a United Kingdom citizen, too. *See, e.g.*, *id.* (limited liability partnerships derive citizenship from their members); *Morgan, Lewis & Bockius LLP v. City of E. Chicago*, No. 08 C 2748, 2008 WL 4812658, at *1 (N.D. Ill. Oct. 29, 2008) (explaining that, "for purposes of diversity jurisdiction, a limited liability partnership has the citizenship of all of its partners") (citing *Carden v. Arkuma Assocs.*, 494 U.S. 185 (1990)).

The fact that Jenner is a citizen of the United Kingdom is fatal to ACA's invocation of diversity jurisdiction. For an LLP, "any single 'non-diverse' partner destroys diversity." *Page*, 2 F.4th at 638. Here, due to the citizenship of its foreign citizen partners, Jenner is considered a foreign citizen, as is Kenyan Plaintiff ACA. As such, this dispute is not between "citizens of different States," 28 U.S.C. § 1332(a)(1); is not a dispute between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2); is not a dispute between "citizens of different States," in which "citizens or subjects of a foreign state" are simply "additional parties," 28 U.S.C. § 1332(a)(3); and is not a dispute between "a foreign state … as plaintiff and citizens of a State or of different States," 28 U.S.C. § 1332(a)(4). As such, there is no diversity jurisdiction. *Page*, 2 F.4th at 636 ("[I]f a party cannot sue or be sued under one of the provisions of the diversity statute, the suit lacks complete diversity"). It is also irrelevant whether a separate entity, Jenner & Block London LLP, includes London partners. *See* Dkts. 28, 37. The undisputed facts reflect that Jenner & Block LLP, the entity Plaintiff sued, includes United Kingdom citizens. *See* Dkt. 19-1. A non-defendant's citizenship has no bearing on the question before the Court.

Courts faced with similar party alignments have concluded diversity does not exist and the federal court lacks jurisdiction. *See, e.g.*, *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006) (holding that subject matter jurisdiction is "lacking" when there is a foreign citizen on both

9

sides of a dispute, so in a case involving an LLC, its members a citizen of North Carolina and New Zealand, and an opposing party citizen of New Zealand was properly dismissed.); *Van Altena v. Hulsbosch Dairy Farm, LLC*, No. 14-CV-2162, 2014 WL 12697355, at *2 (C.D. Ill. Nov. 29, 2014) ("[N]o diversity jurisdiction would exist because all parties on both sides are aliens," where case involved a plaintiff, citizen of Illinois and the Netherlands, and Defendants, citizens of Indiana and Belgium); *Rowell v. Franconia Mins. Corp.*, 706 F. Supp. 2d 891, 897 (N.D. Ill. 2010) (finding no diversity jurisdiction in case involving a plaintiff with Canadian and Illinois citizenship opposing a defendant corporation with Canadian and Washington state citizenship); *see also Saadeh v. Farouki*, 107 F.3d 52, 55, 60 (D.C. Cir. 1997) ("[C]omplete diversity is destroyed in lawsuits between aliens;" collecting cases showing that "the diversity statute d[oes] not confer jurisdiction over a lawsuit involving an alien on one side, and an alien and a citizen on the other side"). Jenner & Block LLP's inclusion as a defendant thus defeats diversity jurisdiction.

**B. The Court Should Relinquish Jurisdiction Over ACA's State Law Claims.**

After dismissal of ACA's defective federal race discrimination claim, only state law claims will remain. Without diversity jurisdiction, the Court may only consider the state law claims under its supplemental jurisdiction, which the Court may "decline" to exercise given dismissal of all federal claims. 28 U.S.C. § 1367(a), (c)(3). Relinquishing jurisdiction over the state law claims is the preferred result, as evidenced by decades of case law. *E.g.*, *Rongere v. City of Rockford*, 99 F.4th 1095, 1106 (7th Cir. 2024) ("When federal claims drop out of the case, leaving only state-law claims," the "general presumption" favors the district court "relinquish[ing]" its jurisdiction); *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction" over state-law claims).

Significantly, however, an exception to this general rule is that a federal court may properly exercise supplemental jurisdiction over orphan state law claims that are "patently frivolous." *Id.* In that circumstance, the Court may exercise jurisdiction and dismiss the claim on the merits to avoid needless litigation elsewhere. As explained further below, that is the case here.

### C. Count IV Fails to State a Claim.

The Court may choose to exercise supplemental jurisdiction over ACA's state law claim against Jenner and dismiss it on the merits as "patently frivolous." *Wright*, 29 F.3d at 1251. The tortious interference claim against Jenner (Count IV) should be dismissed with prejudice under Rule 12(b)(6). Count IV fails to state a claim because the Illinois attorney litigation privilege bars liability. Furthermore, ACA's theories of tortious interference liability fail to state a claim, both because the claim is time barred and because ACA fails to plead sufficient facts.

#### 1. The Absolute Attorney Litigation Privilege Bars Count IV.

Under Illinois law, attorneys are absolutely privileged for statements made and actions taken in the course of representing a client. ACA's claim against Jenner rests entirely on allegations about what Jenner did during its representation of Smith LaCien. *See generally* Compl. ¶¶ 51-59. The allegations in the Complaint establish that the privilege bars ACA's claim.

The Illinois attorney litigation privilege is grounded in Section 586 of the Restatement (Second) of Torts (1977), which provides that a lawyer "is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *See O'Callaghan v. Satherlie*, 2015 IL App (1st) 145152, ¶ 18 (quoting *Restatement (Second) of Torts* § 586 (1977)).

Illinois courts have extended the privilege beyond defamation to other torts involving conduct performed within the practice of law, including tortious interference with prospective

11

business advantage, the claim alleged here. *See Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶ 18, 25; *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 24, 26-27; *Eagle Tr. Fund v. Miller et. al*, 2022 IL App (5th) 210156-U, ¶ 36. The privilege is absolute, meaning that it immunizes an attorney from liability "regardless of the attorney's motives … and irrespective of the attorney's knowledge … or the unreasonableness of his conduct." *Scarpelli*, 2018 IL App (1st) 170874, ¶ 18.

The privilege concerns communications or conduct "relate[d] to proposed or pending litigation." *Id.* ¶ 23 (citing *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25). This "pertinency" requirement is liberally construed, with all doubts resolved *in favor* of finding the statement or conduct at issue was related to proposed or pending litigation. *Id.* ¶ 19. The privilege provides "attorneys with the utmost freedom in their efforts to secure justice for their clients." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 24. Indeed, the privilege protects lawyers' ability to represent their clients *and* prevent retaliatory lawsuits by disgruntled adversaries. *See, e.g.*, *id.*; *Scarpelli*, 2018 IL App (1st) 170874 ¶ 23.

Case law reflects how broadly the attorney litigation privilege extends. It has been applied, for example, to claims that an attorney and law firm "engaged in discovery violations, failed to disclose evidence, concealed evidence, contrived a bad-faith defense, failed to properly participate in settlement and mediation, obtained a court order against the [plaintiffs], attempted to alter expert opinions," and "lied … regarding the underlying litigation." *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 29-33. As these alleged improprieties all "clearly pertained" to the defendants' "role … as attorneys in the underlying action and were done in furtherance of representing their clients," they were protected by the attorney litigation privilege, and the court dismissed the claim. *Id.*

12

ACA alleges Jenner's conduct was performed in connection with representing Smith LaCien and related to proposed or pending litigation. The Complaint alleges Smith LaCien "hired Jenner to help [] manage" Smith LaCien's relationship with ACA and Mr. Muturi. Compl. ¶ 54. Jenner's involvement in this relationship centered on the then-pending Boeing wrongful death lawsuit and Jenner's actions related to a ripening fee dispute between ACA and Smith LaCien, Jenner's client. *Id.* ¶¶ 51-59. From there, ACA's allegations—though Jenner strongly disputes them—are that Jenner, in its client representation, "interfered" with ACA's relationship with Mr. Muturi in various ways in connection with both pending litigation with Boeing and anticipated litigation with ACA. *See id.* ¶¶ 55-58. ACA does not allege that any of Jenner's actions were taken on its own behalf or outside of Jenner's dispute-related client representation. ACA's Complaint thus puts Jenner's actions squarely within the protection of the attorney litigation privilege.

### 2. *ACA's Theories of Liability Fail to State a Claim as to Count IV.*

Count IV suggests two theories of liability: (1) Jenner interfered with the prospective advantage of ACA's contingent fee relationship with the Yongi family; and (2) Jenner interfered with ACA's ability to obtain repeat legal business from the Yongis. Neither theory states a claim.

ACA's first theory of liability is that Jenner purportedly interfered with ACA's relationship with the Yongi Estate, resulting in ACA's termination in February 2022 and preventing ACA from recouping legal fees from the settlement in the Boeing lawsuit. Compl. ¶¶ 51-59. On its face, that theory is time-barred. Illinois law provides any "action for damages" brought "against an attorney" and "arising out of an act or omission in the performance of professional services," whether based "on tort, contract, or otherwise," "must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b). The two-year limitations period applies to all claims against an

13

attorney, whether brought by a client or another party. *See Partners for Payment Relief DE IV, LLC v. Daily*, 128 N.E.3d 444, 448 (Ill. App. Ct. 2019).

Here, ACA's allegations against Jenner arise out of Jenner's legal services for Smith LaCien, culminating in the Yongi Estate's termination of ACA in February 2022. Compl. ¶¶ 51-59. That claim accrued in February 2022. *See In re Est. of Callahan*, 578 N.E.2d at 987-88 (reflecting that, if a client terminates a lawyer who is retained on a contingency fee basis, "the contingency term … is no longer operative"); *W. Irving Die Casting Co. v. Klement*, No. 85 C 4262, 1987 WL 10318, at *2 (N.D. Ill. Apr. 29, 1987) (reflecting that a tortious interference claim accrues the moment the alleged interference caused a business relationship to end or be defeated). ACA waited until *July 2024* to file its first complaint. As such, ACA's claim against Jenner is beyond the two-year statute of limitations, and thus is time-barred.

ACA's second theory of liability is that Jenner's purported tortious interference resulted in the Yongi Estate's decision not to hire ACA for *other* business. Compl. ¶ 56. Under Illinois law, to prevail on a claim of tortious interference, a plaintiff must plead: "(1) a reasonable expectation of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015).

ACA fails to allege that Jenner knew of any expectancy. ACA merely alleges that because ACA informed Smith of "ACA's business expectancy" relating to supposed "other matters" for which ACA advised Mr. Muturi, outside the wrongful death lawsuit, then Jenner "knew or should have known" of them. Compl. ¶¶ 54-56. The Court cannot accept this threadbare conclusion unsupported by any specific facts. *Ashcroft*, 129 S. Ct. at 1939. Indeed, applying Illinois law, courts

14

routinely dismiss similarly conclusory allegations. *See, e.g.*, *Minerva Sportswear Inc. v. First to Finish*, No. 19-2034, 2020 WL 12811576, at *7 (C.D. Ill. Mar. 9, 2020) (dismissing plaintiff's claim for failing to allege defendants knew about the claimed business relationship; it was insufficient for plaintiffs to allege defendants were "well aware" of the general facts); *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 784 (N.D. Ill. 2013) (dismissing tortious interference claim because plaintiff did "not assert anything beyond conclusory allegations" that defendant was "aware of" plaintiff's "seemingly private, ongoing negotiations").

Finally, ACA's allegations sound in fraud. *See* Compl. ¶¶ 51-59; *Restatement (Second) of Torts* § 768. Fraud allegations *must* be pleaded with particularity. Fed. R. Civ. P. 9(b). This heightened pleading standard applies to claims that "sound[] in fraud," even if "not by definition [a] fraudulent tort[]," such as ACA's "interference with economic advantage" claim. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507-08 (7th Cir. 2007). The Complaint does not satisfy Rule 9(b)'s threshold pleading requirement. The circumstances of the alleged fraud or misrepresentation must be pleaded in detail, including the who, what, when, where and how. *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 886 (N.D. Ill. 2019). Rule 9(b) "specifically requires alleging with particularity 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to.'" *Id.* That ACA has failed to do.

## CONCLUSION

For the foregoing reasons, Jenner requests the Court dismiss this case for lack of subject matter jurisdiction, and dismiss Counts IV and VII as to Jenner for failure to state a claim.

Dated: October 31, 2024            Respectfully submitted,

*/s/ Michael T. Brody*
Michael T. Brody
Grace C. Signorelli-Cassady
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com
gsignorelli-cassady@jenner.com

*Counsel for Defendants Jenner & Block LLP and John R. Storino*

## **CERTIFICATE OF SERVICE**

    I hereby certify that, on October 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                                         */s/ Michael T. Brody*
                                                         Michael T. Brody