IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARWA & CHANGE ADVOCATES, LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Court No: 1:24-cv-06620 |
| | ) |
| SMITH LACIEN, LLP, TODD A. SMITH, | ) Honorable Georgia N. Alexakis |
| JENNER & BLOCK, LLP, and JOHN STORINO, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF SMITH LACIEN, LLP AND TODD SMITH'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

On October 10, 2024, Plaintiff Arwa & Change Advocates, LLP ("Plaintiff"), a law firm based out of Kenya, filed its seven-count Amended Complaint ("Complaint") against Smith LaCien, LLP and Todd A. Smith (collectively, "Smith LaCien"), as well co-defendants Jenner & Block, LLP and John R. Storino. The lawsuit arises out of the Smith LaCien and Plaintiff's co-representation of the estate of an individual killed in the May 2019 Ethiopian Airlines crash. Plaintiff alleges that as a result of statements made by Smith LaCien, the client chose to terminate Plaintiff, thereby depriving Plaintiff of the contingency fee it would otherwise have received when the client later settled its claim.

The Complaint asserts six counts against Smith LaCien: Count I (Breach of Implied Contract to Share Fees); Count II (Breach of Fiduciary Duty); Count III (Tortious Interference with Prospective Economic Advantage); Count V (Unjust Enrichment); Count VI (Equitable Lien), and Count VII (Violation of 42 U.S.C. § 1981).[1]

Counts II and III fail for the simple reason that Smith LaCien's alleged statements are protected by the absolute attorney litigation privilege, which protects attorneys from civil suits arising out of actions taken and statements made in connection with litigation. Separately, all six counts asserted

---
[1] Count IV is directed solely at Defendants Jenner & Block, LLP and John R. Storino.

1

against Smith LaCien fall woefully short of alleging all the required elements to sustain the respective causes of action. Therefore, even if the Court finds that the absolute attorney litigation does not apply, Counts II and III of the Complaint should still be dismissed, in addition to the remaining counts against Smith LaCien: Counts I, V, VI, and VII.

## **ALLEGATIONS OF THE COMPLAINT**

On March 10, 2019, a flight departing from Ethiopia to Kenya crashed in Ethiopia, killing all 157 people on board, including Florence Yongi ("Yongi"). [ECF 29, ¶ 8]. Yongi's father, Francis Yongi Muturi ("Muturi"), subsequently retained Plaintiff and the law firm of Power Rogers & Smith, LLP to represent the Yongi's estate in a suit against the manufacturer of the plane, Boeing. [*Id*. at ¶¶ 8-12].

On June 12, 2019, Power Rogers & Smith, LLP filed suit on Muturi's behalf against Boeing in the U.S. District Court for the Northern District of Illinois, Case No. 19-cv-3927 (the "Wrongful Death Case"). [*Id*. at ¶ 15]. Defendant Todd Smith, who at the time was an attorney at Power Rogers & Smith, LLP, subsequently left that firm to form Smith LaCien, LLP. [*Id*. at ¶ 16]. Muturi thereafter discharged Power Rogers & Smith, LLP and retained Smith LaCien. [*Id*.].

On July 17, 2020, Muturi, Smith LaCien, and Plaintiff executed an engagement agreement (the "2020 Engagement Agreement") relating to the Wrongful Death Case, a copy of which is attached to the Complaint as Exhibit 2. [*Id*. at ¶ 17]. Pursuant to the 2020 Engagement Agreement, Muturi agreed to pay 28% of any proceeds obtained from the litigation against Boeing, with Plaintiff and Smith LaCien each receiving 50% of the contingency fee. [ECF 29-2].

On June 25, 2021, Plaintiff supposedly entered into a separate engagement agreement with Muturi (the "Comp Fund Agreement"), pursuant to which Muturi engaged Plaintiff to represent him in his attempt to obtain his share of funds from a Compensation Fund established by Boeing for the benefit

of the family of the victims killed in the plane crash. [ECF 29, ¶ 36].[2] The Compensation Fund was established by Boeing pursuant to a Deferred Prosecution Agreement entered in a criminal proceeding against Boeing arising out of the Ethiopian flight crash. *See* Deferred Prosecution Agreement, **Exhibit A**, ¶ 7.[3] According to the Comp Fund Agreement, Plaintiff was entitled to receive a 28% contingency fee on any funds obtained on Muturi's behalf from the Compensation Fund. [ECF 29-3].[4]

On February 14, 2022, Muturi terminated Plaintiff's representation of Muturi in the Wrongful Death Case. [ECF 29, ¶ 38]. According to the Complaint, Smith LaCien induced Muturi to terminate Plaintiff's representation by falsely telling Muturi that Plaintiff should not have received any fee for its work with respect to the Compensation Fund because Plaintiff had agreed to work on that matter *pro bono*. [*Id*. at ¶¶ 37(b), 46]. In February 2023, Muturi and Boeing settled the Wrongful Death Case for an undisclosed amount. [*Id*. at ¶ 23]. Plaintiff has not received any fee from the settlement, with Smith LaCien receiving the entirety of the 28% contingency fee. [*Id*.].

Based on these allegations, Plaintiffs make the following claims against Smith LaCien: Count I (Breach of Implied Contract to Share Fees); Count II (Breach of Fiduciary Duty); Count III (Tortious Interference with Prospective Economic Advantage); Count V (Unjust Enrichment); Count VI (Equitable Lien); and Count VII (Violation of 42 U.S.C. § 1981).

---

[2] As Plaintiff is well aware but chose not to mention in its Complaint, Muturi denied ever signing the Comp Fund Agreement. Nevertheless, the Court need not confront that fact when evaluating this motion to dismiss.

[3] "The court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 773 (E.D. Wis. 2012); *see also In re Sharif*, 627 B.R. 889, 897 (Bankr. N.D. Ill. 2021) ("The court may take judicial notice of court records.").

[4] To be absolutely clear, the Compensation Fund was created as a result of the U.S. Government's efforts criminally prosecuting Boeing. Plaintiff does not and cannot allege that any of Muturi's attorneys in the Wrongful Death Case, whether Plaintiff or Smith LaCien, had any hand in the creation of the Compensation Fund or the benefits it ultimately bestowed on the victims of the Ethiopian Airline crash, including Muturi.

# ARGUMENT

## I. ABSOLUTE ATTORNEY LITIGATION PRIVILEGE BARS PLAINTIFF'S BREACH OF FIDUCIARY DUTY AND TORTIOUS INTERFERENCE CLAIMS

Under Illinois law, the absolute attorney litigation privilege "derives from section 586 of the Restatement (Second) of Torts," which provides that, "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *See Scully v. Novack & Macey LLP,* 2022 IL App (1st) 210319-U, ¶ 42 (quoting Restatement (Second) of Torts § 586 (1977)). The privilege "gives attorneys the utmost freedom in their efforts to secure justice for their clients" and "facilitates an attorney's need to fully and fearlessly communicate with clients and the free flow of truthful information to the courts." *Id.* (internal quotations and citations omitted).

"The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter." *Popp v. O'Neil*, 730 N.E.2d 506, 510 (Ill. App. Ct. 2000). "In essence, the absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998).

"The only requirement is that the communication pertain to proposed or pending litigation." *Golden v. Mullen,* 693 N.E.2d 385, 390 (Ill. App. Ct. 1997). "The pertinency requirement is not applied strictly, and the communication need not be confined to specific issues involved in the litigation." *Libco Corp. v. Adams*, 426 N.E.2d 1130, 1132 (Ill. App. Ct. 1981) (internal citations omitted). Where pertinency is in question, "all doubts will be resolved in favor of a conclusion that the communication is pertinent or relevant." *Skopp v. First Federal Savings*, 545 N.E.2d 356, 361 (Ill. App. Ct. 1989).

Significantly, the absolute attorney litigation privilege is *not* limited to causes of action for defamation and is *not* limited to communications, as opposed to conduct. *See, e.g., Johnson v. Johnson*

*& Bell, Ltd.*, 2014 IL App (1st) 122677, at ¶ 17 (absolute litigation privilege applies to bar negligent infliction of emotions distress claim and breach of contract claim). To hold otherwise "would undermine the policies behind the privilege." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 27 (affirming dismissal of intentional infliction of emotional distress and strict liability claims based on absolute attorney litigation privilege). Thus, "Illinois courts have consistently held that **_no action_** may be maintained upon any verbal or written statement made by an attorney during a legal proceeding that is pertinent to the matter in controversy." *Popp,* 313 Ill. App. 3d at 644 (emphasis added).

In this matter, Count II (Breach of Fiduciary Duty) and Count III (Tortious Interference with Prospective Economic Advantage) of the Complaint are premised on Plaintiff's allegation that Smith LaCien made a false statement to Plaintiff and Smith LaCien's shared client, *i.e.*, that Plaintiff agreed to represent Muturi in connection with the Compensation Fund on a *pro bono* basis and therefore inappropriately received a fee for its representation in that matter. [ECF 29 at ¶¶ 37(b), 46]. Because this allegation, even if true, relates directly to Smith LaCien's representation of Muturi in connection with the Boeing-related matters, these claims are barred by the absolute attorney litigation privilege.

One cannot reasonably dispute that Smith LaCien's supposedly false statement related to "proposed or pending litigation," since the Compensation Fund arose out of a criminal litigation proceeding. *Mullen,* 693 N.E.2d at 390. Smith LaCien's statement also had "some relation to" to the Wrongful Death Case. *See Scully*, 2022 IL App (1st) 210319-U, ¶ 42. In either event, Smith LaCien's statement is protected by the absolute litigation privilege, thereby providing Smith LaCien "the utmost freedom in [its] efforts to secure justice for [its] client[.]" *Id*.

The Illinois appellate court's ruling in *O'Callaghan* is instructive. There the plaintiffs sued a condominium association claiming that it failed to properly remedy a ceiling leak, causing toxic black mold to infiltrate their condominium. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 4. The suit against the association was ultimately dismissed with prejudice. *Id*. at ¶ 6. The plaintiffs then filed a separate suit

5

against the association's attorneys, alleging intentional infliction of severe emotional distress and strict liability for ultrahazardous activity. *Id*. at ¶ 8. The complaint alleged that the association's counsel committed various wrongful acts in the underlying litigation, including directing vendors who were hired to remedy the plaintiffs' condominium to engage in acts that actually caused the toxic mold to spread. *Id*. at ¶ 8. Affirming dismissal of the plaintiffs' suit on the ground that the attorneys' conduct was protected by the absolute attorney litigation privilege, the appellate court explained:

> In addition, Satherlie's alleged directions to the individuals remedying the condominium were not made to an outsider within the meaning of the privilege; rather, neither Satherlie nor the workers would have had reason to be in the O'Callaghans' condominium but for the mold, the subject of this litigation…

*Id*. at ¶ 29. Here, Smith LaCien's alleged statement concerned the protection of its client's interest in relation to pending litigation, exactly what the privilege is designed to protect.

Because the conduct giving rise to Counts II and III of the Complaint are protected by the absolute attorney litigation privilege, those counts must be dismissed with prejudice. *See Semmerling v. Bormann*, 2019 WL 10375623, at *3 (N.D. Ill. Sep. 11, 2019) (granting motion to dismiss Illinois state law claims based on Illinois' absolute litigation privilege); *Mouloki v. Epee*, 2016 WL 910496, at *12 (N.D. Ill. Mar. 10, 2016) (same); *NSB Technologies, Inc. v. Specialty Direct Marketing*, 2004 U.S. Dist. LEXIS 16830, at **12-13 (N.D. Ill. Aug. 17, 2004) (granting motion to dismiss based on federal common law privilege which borrowed from Illinois' absolute litigation privilege).

## II. COUNT I FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED CONTRACT

Count I of the Complaint asserts a claim for "Breach of Implied Contract to Share Fees." In Plaintiff's original complaint, Plaintiff alleged that an implied contract between Plaintiff and Smith LaCien arose on <u>July 17, 2020</u> "when they entered into a written agreement to jointly represent Mr. Muturi to prosecute a claim or cause of action against the Boeing Company…and to share twenty eight percent (28%) of the gross amount that may be received[.]" [ECF 1, ¶ 22]. In its newest Complaint, Plaintiff alters its theory, now claiming that an implied contract arose more than three years later in

November 2023 when Jenner & Block attorney, John Storino, while acting as an agent of Smith LaCien, allegedly informed Plaintiff that Smith LaCien would pay Plaintiff "its share of the settlement proceeds." [ECF No. 29, ¶¶ 24, 29-30].

As an initial matter, Count I is illogical and contrary to Illinois law. Plaintiff's right to a contingency fee with respect to the Wrongful Death Case arose exclusively by virtue of the 2020 Engagement Agreement, which Muturi had the absolute right to terminate at will. *See Layden v. Chi. Title Land Tr. Co*, 2024 IL App (2d) 230007, ¶ 38 ("A client can terminate an attorney at any time with or without cause."). When a client terminates an attorney engaged pursuant to a contingency fee contract, "the contract becomes unenforceable and the attorney cannot recover under that contract. Instead, the discharged attorney may recover only under a theory of *quantum meruit*." *Id*. Here, that means Muturi's termination of Plaintiff served to terminate Plaintiff's right to a contingency fee pursuant to the 2020 Engagement Agreement. Plaintiff has no other basis to claim a right to a contingency fee, and its "breach of implied contract to share fees" claim is a brazen attempt to bypass this well-established law.

Separately, Count I is premised on a supposed conversation between Plaintiff and Jenner & Block attorney John Storino ("Storino") in which Storino "promised" that Smith LaCien would pay Plaintiff's fee. [ECF No. 29, ¶¶ 29-30]. This supposed conversation occurred in November 2023, long after the Muturi and Boeing settled the underlying Wrongful Death Case in February 2023 and long after Muturi terminated Plaintiff as his attorney in February 2022. Even assuming this conversation occurred, it cannot support the creation of a contract since Plaintiff does not and cannot allege valid consideration.

"An implied contract arises where the intention of the parties is not expressed but an agreement in fact creating an obligation is implied or presumed from their acts—in other words, where circumstances under common understanding show a mutual intent to contract." *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 698 N.E.2d 257, 265 (Ill App. Ct. 1998).

7

"Like any other contract, an implied contract must contain the traditional elements of offer, acceptance, and consideration." *Bosch v. NorthShore Univ. Health Sys.*, 2019 IL App (1st) 190070, ¶ 28.

With respect to the consideration element, "[a]ny act or promise which is of benefit to one party or disadvantage to the other party is sufficient[.]" *Johnson v. Johnson*, 614 N.E.2d 348, 355 (Ill. App. Ct. 1993). "However, the general rule dictates that if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract." *Id.*

Here, the Complaint fails to allege any consideration offered by Plaintiff in exchange for Storino's promise in November 2023 that Smith LaCien would pay Plaintiff its "share" of the settlement proceeds. The Complaint only references services provided by Plaintiff to Muturi long before the supposed November 2023 conversation, which would constitute past consideration insufficient to support a contract in November 2023. *See Johnson*, 614 N.E.2d at 355*; see also Watkins v. GMAC Fin. Servs.*, 785 N.E.2d 40, 44 (Ill. App. Ct. 2003) ("Preexisting obligations are not sufficient consideration."). Count I therefore fails to state a claim since it does not allege sufficient consideration.

Finally, to the extent Plaintiff is relying on its prior services to establish consideration, its implied contract claim fails for the additional reason that such services were rendered pursuant to a written agreement between Muturi, Plaintiff, and Smith LaCien, *i.e.*, the 2020 Engagement Agreement. The problem for Plaintiff is that "if an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law." *Archon Constr. Co. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 33. The Illinois Supreme Court explained the rationale for this principle long ago in *Walker v. Brown*, 28 Ill. 378, 383 (1862):

> As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree, that the law interposes and raises a promise.

## III. COUNT II FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

Count II asserts a claim for breach of fiduciary and is premised on a theory that Plaintiff and Smith LaCien entered into a "joint venture or special partnership" when they executed the 2020 Engagement Agreement, thereby creating a fiduciary relationship between Plaintiff and Smith LaCien. [ECF 29, ¶ 35]. Plaintiff alleges that by virtue of this "joint venture or special partnership," Smith LaCien owed Plaintiff a fiduciary duty, which Smith LaCien breached in two ways: (1) by falsely informing Muturi that Plaintiff had agreed to provide services relating to Compensation Fund matter on a *pro bono* basis and therefore improperly obtained fees in connection with that matter; and (2) by repeating that false statement to the ARDC and Kenyan law enforcement. [*Id*. at ¶¶ 37, 40]. As explained below, neither alleged breach supports a breach of fiduciary duty claim.

"To prevail on a claim for breach of fiduciary duty, it must be alleged and ultimately proved (1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which the party complains." *Indeck Energy Servs. v. Depodesta*, 2021 IL 125733, ¶ 47, 183 N.E.3d 746, 759 (Ill. 2021). Plaintiff's two breach allegations fail for different reasons.

With respect Plaintiff's allegation concerning Smith LaCien's allegedly false statement to Muturi, Plaintiff cannot prove the final element of a breach of fiduciary duty claim: proximate causation of an injury. To satisfy this element, Plaintiff alleges that the false statement to Muturi caused him to terminate Plaintiff's representation in the Wrongful Death Case, resulting in the loss of Plaintiff's contingency fee. [ECF 29, ¶¶ 38-39]. This allegation, however, defies logic. According to the Complaint, Muturi signed the Comp Fund Agreement, which entitled Plaintiff to a 28% fee on any recovery obtained by Muturi from the Compensation Fund. If this is true, then a statement by Smith LaCien to Muturi that Plaintiff agreed to provide services with respect to the Compensation Fund for free would be illogical and could not plausibly form the basis for Muturi's decision to terminate Plaintiff's representation in the Wrongful Death Case. In other words, Muturi himself did not accept

Smith LaCien's supposedly false statement since, according to the Complaint, he agreed in writing to pay and did ultimately pay Plaintiff a contingency fee in the Compensation Fund matter.

While a Court must draw all reasonable inferences in favor of a plaintiff when ruling on a motion to dismiss, an inference is only reasonable where it "is plausible and [] flows logically from the facts alleged." *Simonian v. Pfizer Inc.*, No. 10 C 1193, 2011 WL 780836, at *1 (N.D. Ill. Feb. 22, 2011). Any inference that Muturi relied on a false statement by Smith LaCien that Plaintiff agreed to work on the Compensation Fund matter *pro bono* is contradicted by Plaintiff's allegation that Muturi signed an agreement entitling Plaintiff to a 28% contingency fee in that matter. Under these circumstances, the Court need "not strain to find inferences favorable to the plaintiff[] which are not apparent on the face of" its Complaint. *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977).[5]

With respect Plaintiff's second breach allegation that Smith LaCien made false statements to Kenyan law enforcement and the ARDC which caused Plaintiff to incur legal fees and damage to its reputation (ECF 29, at ¶ 40), the Complaint fails to allege when these supposed statements were made. The timing, of course, is critical because if they were made *after* Muturi terminated Plaintiff and therefore after the termination of any alleged joint venture between Plaintiff and Smith LaCien, Smith LaCien would have no longer owed any fiduciary duty to Plaintiff. By failing to allege that Smith LaCien's statements to law enforcement and the ARDC occurred during the duration of the alleged joint venture, Plaintiff fails to establish a breach of fiduciary duty based on these statements.

## IV. COUNT III FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

Count III attempts to make a claim for tortious interference with prospective economic advantage. The Complaint specifically alleges that Smith LaCien's false statement was purposely made

---

[5] What Plaintiff neglects to inform the Court is that Muturi categorically denied ever signing the Comp Fund Agreement and maintained that his supposed signature on that document was doctored. That is the reason Muturi terminated Plaintiff's representation. Nevertheless, Smith LaCien need not establish the true motivation behind Muturi's decision to terminate Plaintiff's representation. All that matters at this stage is that Plaintiff's theory of causation is untenable as a matter of law.

to interfere with Plaintiff's attorney-client relationship with Muturi and did, in fact, cause Muturi to terminate said relationship. [ECF 29, ¶¶ 37(b), 46]. This claim fails for lack of any interference.

"Tortious interference with prospect advantage or business opportunity consists of the following elements: (1) the plaintiff has a reasonable expectancy of entering into a business relationship; (2) the defendant knows of the expectancy; (3) the defendant interferes and prevents the realization of the business relationship; and (4) the defendant's interference actually damages the plaintiff." *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 747, 910 N.E.2d 1134, 1157-58 (Ill. App. Ct. 2009). Count III fails to allege the final two elements.

As stated above, Smith LaCien's supposedly false statement to Muturi cannot plausibly have caused Muturi to have terminated his relationship with Plaintiff. If Muturi did sign the Comp Fund Agreement entitling Plaintiff to a fee from the proceeds obtained from the Compensation Fund, Smith LaCien's alleged statement to Muturi that Plaintiff agreed to provide its services *pro bono* would have been implausible. Plaintiff's assertion that Smith LaCien's alleged statement caused Muturi to terminate Plaintiff's representation is an unreasonable inference that this Court must reject. *See Simonian,*, No. 10 C 1193, 2011 WL 780836, at *1.[6]

## V. COUNT V FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Count V asserts a claim for unjust enrichment. To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). "The doctrine of unjust enrichment permits 'recovery of a benefit that was transferred to the defendant by a third party.'" *Vill. of Bensenville v. City of Chi*., 906 N.E.2d 556, 593 (Ill. App. Ct. 2009) (quoting

---

[6] Smith LaCien adopts incorporates by reference the statute of limitation grounds for dismissal argued by Defendant Jenner & Block in its motion to dismiss the tortious interference claim asserted against it. *See* Dkt. 39, Section II(C)(2), at pp. 13-14.

*HPI Health*, 545 N.E.2d at 679). "The defendant's retention of a benefit transferred to it by a third party would be unjust where: '(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.'" *Id*. (quoting *HPI Health*, 545 N.E.2d at 679).

Here, Plaintiff's unjust enrichment claim cannot meet any of the required elements. Count V does not allege that Muturi paid the entire 28% contingency fee to Smith LaCien by mistake. Count V does not allege that Muturi paid the entire 28% contingency fee to Smith LaCien as a result of wrongful conduct by Smith LaCien.[7] And finally, Count V does not allege that Plaintiff has a better claim to the contingency fee (or any portion thereof) than Smith LaCien. In fact, elsewhere in the Complaint, Plaintiff concedes that Muturi terminated Plaintiff's services. [ECF 29, ¶ 38]. As stated above, under Illinois law, Muturi was well within his right to terminate Plaintiff and therefore terminate Plaintiff's right to any portion of the contingency fee. *See Layden*, 2024 IL App (2d) 230007, ¶ 38 ("A client can terminate an attorney at any time with or without cause. However, if a client terminates a contingency fee contract, the contract becomes unenforceable and the attorney cannot recover under that contract. Instead, the discharged attorney may recover ***only*** under a theory of *quantum meruit*.") (emphasis added).

## VI. COUNT VI FAILS TO STATE A CLAIM FOR AN EQUITABLE LIEN

Count VI of the Complaint asserts a claim for an equitable lien. The imposition of an equitable lien "is a remedy for a debt that cannot be legally enforced but, based upon considerations of right and fairness, should be recognized." *Bank of Am., Nat'l Ass'n v. Schroeder*, 2021 IL App (3d) 200339, ¶ 32, 189 N.E.3d 1073, 1083. "To assert an equitable lien, the plaintiff must establish the following two

---

[7] Notably, Count V does not incorporate the Complaint's allegations that Smith LaCien wrongfully induced Muturi's termination of Plaintiff. Those allegations, therefore, cannot serve to establish "some type of wrongful conduct" sufficient to sustain an unjust enrichment theory. Further, if Plaintiff were to incorporate those allegations into Count V, then Count V would be barred pursuant to the absolute attorney litigation privilege for the same reasons Counts II and III should be barred.

12

elements: (1) a debt, duty, or obligation owed to the plaintiff by the defendant; and (2) the existence of a *res*, an asset that in some way is particularly related to the debt or obligation." *Id*. Plaintiff's request for an equitable lien fails for two reasons.

First, the Complaint fails to allege a debt or obligation owed by Smith LaCien to Plaintiff. The 2020 Engagement Agreement required Muturi, not Smith LaCien, to pay a portion of its recovery in the Wrongful Death Case to Plaintiff. The agreement created no obligation for Smith LaCien to pay Plaintiff any fee. For the reasons explained in Sections II and V above, the Complaint does not allege that such obligation arose anywhere else.

Second, even if the 2020 Engagement Agreement is interpreted to obligate Smith LaCien to pay a portion of the contingency fee to Plaintiff, the Complaint concedes that Muturi terminated Plaintiff's representation and therefore the 2020 Engagement Agreement. [ECF 29, ¶ 38]. "A client can terminate an attorney at any time with or without cause." *Layden,* 2024 IL App (2d) 230007, ¶ 38. As a result, Muturi validly terminated any obligation to pay Plaintiff a contingency fee.

## VII. COUNT VII FAILS TO STATE A § 1981 CLAIM

Count VII of the Complaint asserts a violation of 42 U.S.C. § 1981, which states, in pertinent part, that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts[.]" 42 U.S.C.S. § 1981(a). "To state a claim under section 1981, a plaintiff must allege that '(1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract.'" *Shed v. Fraternal Enters. LP,* 2023 WL 3074876, at *9 (N.D. Ill. Apr. 25, 2023) (quoting *Pourghoraishi v. Flying J, Inc*., 449 F.3d 751, 756 (7th Cir. 2006)). "§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Plaintiff alleges that its two partners are black, while Smith LaCien's partners are white. [ECF 29, ¶¶ 3-4]. Plaintiff alleges that Smith LaCien "violated ACA's rights under 42 U.S.C. § 1981 to make and enforce contracts" by: (1) not allowing ACA's partner into Smith LaCien's office in November 2023, obstructing Plaintiff's attempt "to enforce ACA's contract with LaCien to share fees"; (2) not allowing ACA's partner into Smith LaCien's office in November 2023, obstructing Plaintiff's attempt "to make a new contract to resolve the fee issue"; and (3) failing "to pay [Plaintiff] its rightfully earned fees[.]" [*Id*. at ¶¶ 80, 82]. Plaintiff's allegations essentially boil down to Smith LaCien not paying Plaintiff (through settlement or otherwise) the contingency fee Plaintiff claims it was owed.

Plaintiff's § 1981 claim fails for two reasons. First, all theories of liability are premised on there being a contract between Smith LaCien and Plaintiff obligating Smith LaCien to pay Plaintiff a fee from the Wrongful Death Case settlement. As explain in Section II *supra*, no such contract or obligation existed, meaning that Smith LaCien's decision not to pay Plaintiff a fee (whether through a settlement agreement or otherwise) did not interfere with Plaintiff's right to make or enforce a contract.

Second, Plaintiff fails to adequately allege any discriminatory intent. On this point the Complaint does little more than allege that Plaintiff's partners are black while Smith LaCien's partners are white. Plaintiff then alleges in conclusory fashion that Smith LaCien "did not subject similarly situated white persons or entities to the same terms" and "did not and would not have subjected" law firms with white partners "to the same mistreatment." [*Id*. at ¶¶ 82, 83]. The law is clear, however, that "[c]onclusory allegations don't cut it." *Shed v. Fraternal Enters. LP*, 2023 WL 3074876, at *12-13 (N.D. Ill. Apr. 25, 2023) (dismissing § 1981 claim where the complaint merely included "conclusory allegations that Defendants gave Shed a hard time because of his race").

Counsel for Plaintiff, Eric Onyango, should be familiar with this § 1981 requirement as he has previously filed a § 1981 claim on his own behalf, only to have it dismissed for failing to allege discriminatory intent. In *Onyango v. Nick & Howard, LLC*, Mr. Onyango filed a § 1981 claim against

14

a nightclub after allegedly being denied entry. 607 F. App'x 552, 553-554 (7th Cir. 2015). Mr. Onyango alleged, amongst other things, that black customers waited longer in lines than whites, bouncers lied to some black customers about wait times, and bouncers unevenly enforced dress codes. *Id*. at 555. Onyango concluded that "that any difference in treatment must be the result of a club policy of racial exclusion." *Id*. The Seventh Circuit affirmed the dismissal of Mr. Onyango's complaint, finding that "a conclusion like Onyango's that is based on 'facts that are merely consistent with a defendant's liability' is legally insufficient." *Id*.

Here, Plaintiff's allegations of discriminatory intent fare even worse than the allegations in *Onyango v. Nick & Howard*. Plaintiff offers not a scintilla of facts to show that Smith LaCien acted with discriminatory intent. Plaintiff's conclusory assertion that it was treated differently than similarly situated whites is insufficient because Plaintiff does not (and cannot) allege that Smith LaCien shared a contingency fee with another law firm in a remotely similar situation (*i.e.*, where Smith LaCien was co-representing a client with another law firm that was subsequently terminated by the client). "To establish that someone, or some company, is similarly situated, a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Amber Pyramid, Inc. v. Buffington Harbor Riverboats, L.L.C.*, 129 F. App'x 292, 295 (7th Cir. 2005) (finding that plaintiff "never identified a similarly situated vendor that was treated more favorably in its dealings with" defendant). Plaintiff's mere recitation of being treated less favorably than a similarly situated white person, without any more facts, fails to satisfy the discriminatory intent element of its § 1981 claim. *See, e.g., Mir v. State Farm Mut. Auto. Ins. Co*., 847 F. App'x 347, 350 (7th Cir. 2021) (affirming the dismissal of a conclusory allegation of discrimination under section 1981); *Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 2022 WL 2390828, at *14 (N.D. Ill. 2022) (holding that claims do not become plausible by "merely tack[ing] 'because of race'" onto the allegations).

## **CONCLUSION**

For all of these reasons, Defendants, SMITH LACIEN, LLP and TODD A. SMITH, respectfully request that this Honorable Court enter an order dismissing Plaintiff's Amended Complaint with prejudice and granting any other relief this Court deems just and proper.

| | |
|---|---|
| Dated: October 31, 2024 | Respectfully submitted, |
| | SMITH LACIEN, LLP and TODD A. SMITH |
| | By:   /s/ *Joseph R. Marconi*          <br>       One of Their Attorneys |

Joseph R. Marconi, ARDC #1760173
Ramses Jalalpour, ARDC #6313128
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
312.372.0770 (T)
marconij@jbltd.com
jalalpourr@jbltd.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2024, a true and correct copy of the foregoing document was served on all counsel of record via CM/ECF.

*/s/ Joseph R. Marconi*