IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARWA & CHANGE ADVOCATES LLP | )<br>)<br>)<br>) |
| *Plaintiff*, | ) Case No.:24-cv-6620<br>)<br>) Jury Trial Demanded<br>)<br>) Amount Demanded: $1,500,000+ |
| v. | )<br>) District Judge: Hon. Georgia N. Alexakis |
| SMITH LACIEN LLP AND<br>TODD A. SMITH | )<br>) Magistrate Judge: Hon. Sheila M. Finnegan<br>)<br>)<br>) |
| *Defendants*. | ) |

## THIRD AMENDED COMPLAINT

Plaintiff Arwa & Change Advocates LLP ("ACA") "Plaintiff"), complains of Defendants Smith Lacien LLP ("Lacien") and Todd A. Smith ("Smith") and seeks appropriate judicial relief.

## JURISDICTION

1. The Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(a)(2).

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants are located in this judicial district.

## THE PARTIES

3. ACA is a reputable international law firm based in Nairobi, Kenya. It conducts business across the world, including in the United States. It has two partners, Japheth Change ("Change")

1

and Eunice Arwa ("Arwa") – and several associates. All of ACA's lawyers were of good repute and in good standing at all relevant times. ACA's partners are citizens of Kenya.

4. Lacien is a law firm based in Chicago, Illinois. It has two partners, Defendant Smith and Brian Lacien ("Brian"). Smith and Brian are, upon information and belief, Illinois citizens.

5. Plaintiff seeks more than the $75,000 jurisdictional amount in damages.

## FACTUAL BACKGROUND

6. Plaintiff filed this action on or about July 29, 2024. This third amended complaint relates back to the original complaint.

7. On or about March 10, 2019, Ethiopian Airlines, operating as flight ET302 on a Boeing 737 Max 8 aircraft crashed in Ethiopia shortly after takeoff from Addis Ababa, Ethiopia to Nairobi, Kenya, killing all 157 people on board. Francis Yongi Muturi ("Mr. Muturi") lost his daughter, Florence Wangari Yongi ("Yongi") on the flight.

8. On or about May 2019, Mr. Muturi approached ACA and asked it to represent him in prosecuting a case against the Boeing Company because of the death of his daughter in the crash of Ethiopian Airlines Flight ET 302 on or about March 10, 2019. He did so through and together with another gentleman called Ralph Edward Nguma Nzwii ("Mr. Nguma"), who held himself out as a consultant for the family and claimed to others to be a lawyer, but was not in fact a lawyer.

9. Mr. Muturi and ACA's relationship grew over time, and he sought ACA's counsel in other matters that were not related to litigation.

10. Since Boeing Company was headquartered in Chicago, Illinois at the time, ACA determined that it was only possible for the suit to be filed in Illinois, especially since other lawsuits had already been filed there. As such, ACA contacted several law firms in Chicago, seeking a co-representation arrangement.

11. On or about June 3, 2019, Power Rogers & Smith LLP ("Power Rogers"), a Chicago law firm that has since re-branded as Power Rogers LLP and ACA entered into a written agreement in which the two law firms were to represent Mr. Muturi "to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302." As Compensation, Mr. Muturi agreed to pay and assigned to the two law firms twenty eight percent (28%) of the gross amount that may be received, whether by trial, settlement, or otherwise.

12. Mr. Muturi also directed and authorized the two law firms to incur reasonable, ordinary, and necessary expenses and costs in the preparation and prosecution of the suit, claim, or cause of action; and agreed to reimburse the two law firms in the actual amount of the costs and expenses so incurred. The reimbursement was to be in addition to the attorney's fees.

13. Mr. Muturi further agreed that both law firms would "share equally in the responsibility for the performance of the services in question." Mr. Muturi further understood, agreed, and consented to the fact that any attorney's fees realized would "be shared between POWER ROGERS & SMITH, LLP and ARWA & CHANGE ADVOCATES LLP; and that, of the total attorneys' fee, POWER ROGERS & SMITH, LLP" would "receive fifty (50%) percent and "ARWA & CHANGE ADVOCATES LLP" would "receive fifty "(50%) percent."

14. On or about June 12, 2019, POWER ROGERS & SMITH, LLP, with input from ACA, filed a lawsuit as Case No. 19-cv-3927 on Mr. Muturi's behalf in the United States District Court for the Northern District of Illinois ("Wrongful Death Case"). That case was consolidated with others under Case No. 19-cv-2170 and captioned as In Re Ethiopian Airlines Flight ET 302 Crash.

15. On or about July 14, 2020, some issues arose between Smith and Power Rogers, the exact full details of which Plaintiff is currently unaware. As a result, some attorneys from Power Rogers split and formed a new law firm called Smith Lacien LLP ("Lacien").

16. Around the same time, Smith contacted Change on his own behalf and on behalf of Lacien. During the conversation, Smith asked Change if he could persuade Mr. Muturi to move to his law firm. In exchange, Smith promised Change that he would pay him and his law firm fifty percent of all attorneys' fees that was recovered from the lawsuit and expenses that ACA would incur related to the lawsuit and that he would also pay Power Rogers any fees that they could claim on any theory. Change accepted Smith's offer and persuaded Muturi to agree to move his claims to Lacien. Mr. Muturi was a gentleman of limited education and knowledge.

17. Without Change and ACA, Smith and Lacien would have never met or represented Mr. Muturi.

18. Consequently and subsequently, Mr. Muturi entered into a new written agreement, which discharged Power Rogers, but retained ACA and the new law firm, Lacien, under the same terms of representation as the prior agreement between Power Rogers, ACA and Mr. Muturi.

19. On or about July 17, 2020, Mr. Muturi, Lacien and ACA executed a new written agreement ("July 17, 2020 Agreement"). Like the prior agreement, the July 17, 2020 agreement Mr. Muturi entered into with Lacien and ACA provided that the two law firms were to represent Mr. Muturi "to prosecute a claim or cause of action against the Boeing Company, and/or other persons or entities responsible for the death of FLORENCE WANGARI YONGI on or about March 10, 2019, at or near Bishoftu, Ethiopia on Ethiopian Airlines Flight 302."

20. As Compensation, Mr. Muturi agreed to pay and assigned to the two law firms twenty eight percent (28%) of the gross amount that may be received, whether by trial, settlement, or

otherwise. *Id*. Mr. Muturi also directed and authorized the two law firms to incur reasonable, ordinary, and necessary expenses and costs in the preparation and prosecution of the suit, claim, or cause of action; and agreed to reimburse the two law firms in the actual amount of the costs and expenses so incurred. The reimbursement was to be in addition to the attorney's fees.

21. Mr. Muturi further agreed that both law firms would "share equally in the responsibility for the performance of the services in question." Mr. Muturi further understood, agreed, and consented to the fact that any attorney's fees realized would "be shared between SMITH LACIEN, LLP and ARWA & CHANGE ADVOCATES LLP; and that, of the total attorneys' fee, SMITH LACIEN, LLP" would "receive fifty (50%) percent" and "ARWA & CHANGE ADVOCATES LLP" would receive "(50%) percent."

22. From June 9, 2019 until about February 14, 2022, ACA represented Mr. Muturi competently and diligently. Specifically, the firm accomplished the following:

    a. Collected facts from Mr. Muturi and other family members, friends and associates and analyzed those facts in the context of the claims that Mr. Muturi could have, or had, including facts related to damages and passed them along to Power Rogers and later, Smith Lacien for the prosecution of the lawsuit;

    b. conducted extensive legal research into relevant applicable laws across various jurisdictions that had a direct bearing on the matter as well as all other matters that could have conceivably had any impact upon the Plaintiff's ability to recover;

    c. Authored and exchanged various legal opinions that were crucial to recovery of compensation;

    d. Presented and explained various proposed and actual pleadings to Mr. Muturi;

  e. Presented and explained various discovery requests to Mr. Muturi and helped him formulate responses;

  f. Engaged in numerous meetings and discussions with co-counsel as well as Mr. Muturi and his family members;

  g. Engaged in extensive settlement discussions with co-counsel and mediation with Boeing that resulted in a substantial offer;

  h. Provided legal advice to Mr. Muturi on other non-litigation matters.

23. On or about January 14, 2021, ACA, representing Mr. Muturi, participated in a Zoom mediation session with Boeing before Cook County Circuit Court Retired Chief Judge Donald O'Connell. The session included attorneys from Lacien; specifically, Smith and Brian; as well as attorneys from Boeing Company and attorneys from ACA, specifically, Change, and Isaac Odhiambo. During the mediation, Mr. Muturi's last demand was $23 million, while Boeing's last offer was $5 million. The case did not settle on that day.

24. By February 14, 2022, ACA had expended more than 2,470 hours in the case and incurred expenses related to its representation of Mr. Muturi in connection with the case.

25. On or about February 2023, the Wrongful Death Case settled for an amount that ACA does not currently know, but that it believes exceeds 6 million U.S. dollars. Smith and Lacien have wrongfully kept at least 28 percent of the settlement amount being the entire agreed attorney's fees to themselves.

26. Sometime between March 2023 and November 2023 on various dates, in both Chicago, Illinois and Nairobi, Kenya, Smith and Lacien, directly and through agents, including John Storino, falsely stated to ACA that the Wrongful Death Case had not yet settled. ACA relied on

6

Smith and Lacien's representations to its detriment and delayed asserting these claims; and in addition, incurred other expenses and costs, including attorney's fees.

## COUNT ONE
## ACA AGAINST SMITH & LACIEN LLP AND TODD A. SMITH
## BREACH OF ORAL CONTRACT

27. Plaintiff ACA re-alleges and re-asserts paragraphs 1-26 as if fully set forth herein.

28. On or about July 14, 2020, Smith and Lacien and ACA entered into a valid and enforceable oral contract ("Fee Sharing Contract") in which Smith and Lacien agreed to provide litigation legal services to ACA's client Muturi; and in exchange, Smith and Lacien would collect and pay ACA fifty percent of the legal fees that were secured from litigation or settlement plus any expenses that ACA incurred in the course of the litigation. Smith and Lacien also agreed to be responsible for any consequential or contingent damages from the agreement, including paying any claims that Power Rogers could make related to legal fees on any theory.

29. ACA performed all its obligations under the contract.

30. ACA believes that Smith and Lacien collected at least $6 million from Boeing in the Wrongful Death case when the case settled around February 2023.

31. At relevant times, some of the beneficiaries of the proceeds of the settlement informed ACA that Smith and Lacien received and wrongfully kept ACA's share of the settlement proceeds. The Beneficiaries also stated to ACA that Smith had stated to them that ACA should not be paid any legal fees or expenses.

32. Smith and Lacien breached the Fee Sharing Contract on or about March 2023, and they continue to be in breach of the Fee Sharing Contract when:

    a. They collected what ACA believes to be at least $1,680,000 in legal fees from the Wrongful Death case that Muturi had filed but failed to pay ACA any of the fifty percent and expenses that they had agreed to pay ACA; and

7

    b. Failed to keep ACA informed of the progress of the case, including that settlement had been achieved.

33. As a direct or proximate result of Smith and Lacien's breach, ACA suffered actual and consequential damages of a monetary nature, including but not limited to loss of revenues and unreimbursed expenses exceeding $2,000,000.

**WHEREFORE**, Plaintiff, Arwa & Change LLP, prays that this Court enter judgment on its behalf and against Smith Lacien LLP AND Todd A. Smith for actual and consequential damages for breach of the Contract.

## COUNT TWO
## ACA AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
## UNJUST ENRICHMENT

34. Plaintiff ACA re-alleges and re-asserts paragraphs 1-26 as if fully set forth herein.

35. ACA pleads this unjust enrichment claim in the alternative, to the extent that it is determined that a contract does not exist or otherwise apply.

36. ACA agreed to move with its client from Power Rogers to Smith and Lacien after Smith and Lacien promised it that it would collect and pay to ACA fifty percent of the legal fees and expenses that were paid in the Wrongful Death case.

37. ACA believes that the case settled for a gross amount of more than six million dollars ($6,000,000). Smith and Lacien collected and wrongfully kept at least 28% of the gross proceeds, including ACA's share and has to date failed to give ACA 50% of the legal fees that it promised it would collect and pay ACA.

38. ACA introduced Mr. Muturi to Smith and Lacien and persuaded Mr. Muturi to join Smith Lacien, at Smith's request, after Smith had a falling out with Power Rogers. Mr. Muturi's family members have informed ACA that they do not have a problem with ACA being paid; and that it

is Smith and Lacien that have refused to release ACA's funds, and that ACA should pursue its funds from Smith and Lacien. Smith and Lacien have wrongfully retained ACA's funds.

39. Smith and Lacien have unjustly retained a benefit of a substantial amount of money that rightfully belongs to ACA, to ACA's detriment.

40. Smith and Lacien's retention of the benefit, that is, a substantial amount of money to which ACA is rightly entitled and Smith and Lacien are not, violates the fundamental principles of justice, equity and good conscience.

**WHEREFORE**, Plaintiff, Arwa & Change LLP, prays that this Court enter judgment on its behalf and against Todd A. Smith and Smith Lacien LLP for actual and compensatory damages under unjust enrichment theory.

## COUNT THREE
## ACA AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
## PROMISSORY ESTOPPEL

41. Plaintiff ACA re-alleges and re-asserts paragraphs 1-26 as if fully set forth herein.

42. ACA pleads this promissory estoppel claim in the alternative, to the extent that it is determined that a contract covering the claim does not exist or otherwise apply.

43. On or about July 14, 2020, Smith and Lacien made an unambiguous promise to ACA that if it agreed to move with its client Mr. Muturi from Power Rogers to Smith and Lacien, Smith and Lacien would collect and pay to ACA fifty percent of the legal fees plus expenses that were paid in the Wrongful Death case.

44. ACA relied on Smith and Lacien's unambiguous promise and moved its client, Mr. Muturi from Power Rogers to Smith Lacien.

45. ACA's reliance on Smith and Lacien's promise was expected and foreseeable by Smith and Lacien because:

9

   a. Smith had been the primary litigator on the case before he fell out with Power Rogers;

   b. Smith claimed to ACA that Power Rogers practiced nepotism;

   c. Smith and Lacien promised to resolve any fee issues with Power Rogers;

   d. Mr. Muturi was not sophisticated;

   e. ACA had an established relationship with Mr. Muturi; and

   f. Mr. Muturi's case had already been litigated for about one year.

46. ACA relied on Smith and Lacien's unambiguous promise to its detriment because to date, Smith and Lacien have refused to pay it the fifty percent of legal fees that it collected from the Wrongful Death case plus expenses. ACA's reliance was reasonable and justifiable under the circumstances.

**WHEREFORE,** Plaintiff, Arwa & Change LLP, prays that this Court enter judgment on its behalf and against Todd A. Smith and Smith Lacien LLP for actual and compensatory damages under promissory theory.

## COUNT FOUR
## ACA AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
## QUANTUM MERUIT

47. Plaintiff ACA re-alleges and re-asserts paragraphs 1-26 as if fully set forth herein.

48. ACA performed a service, the provision of client referral, legal services and client management that was of measurable value to Smith and Lacien that enabled it to litigate Mr. Muturi's Wrongful Death case and earn millions of dollars.

49. ACA did not perform the service gratuitously.

50. Smith and Lacien accepted the service and relied on ACA and its resources for years.

51. No written contract exists to prescribe payment for ACA's services to Smith and Lacien.

10

52. It would be inequitable and unjust for Smith and Lacien to retain the benefit it received from ACA without paying for it. ACA believes that Smith and Lacien collected more than $6 million from the Wrongful Death case, but to date, it has refused to pay ACA anything.

53. The reasonable value of the services ACA provided to Smith and Lacien exceeds $2 million.

**WHEREFORE**, Plaintiff, Arwa & Change LLP, prays that this Court enter judgment on its behalf and against Todd A. Smith and Smith Lacien LLP for actual and compensatory damages under quantum meruit theory.

### COUNT FIVE
### ACA AGAINST TODD A. SMITH AND SMITH & LACIEN LLP
### ADJUDICATION OF EQUITABLE LIEN

54. Plaintiff ACA re-alleges and re-asserts paragraphs 1-53 as if fully set forth herein.

55. Smith and Lacien owe ACA a debt or obligation from a contract, promise or otherwise uncompensated services in unpaid share of legal fees and expenses that exceeds $2 million.

56. A *res* exists in the form of settlement funds from Mr. Muturi's Wrongful Death case that Smith and Lacien collected but have refused to pay to ACA.

57. This Court is empowered to adjudicate ACA's equitable lien for the legal fees and expenses that Smith Lacien agreed to pay ACA, or to which ACA is otherwise entitled but has refused to pay, and to enter an order directing Smith and Lacien to provide it with an equitable share of its legal fees.

**WHEREFORE**, Plaintiff, Arwa & Change LLP, prays that this Court adjudicate its equitable lien and enter judgment on its behalf and against Todd A. Smith and Smith Lacien LLP in an amount that is equitable and just.

### JURY DEMAND

58. Plaintiff hereby demands a trial by a jury of twelve pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure on all triable issues.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Arwa & Change Advocates LLP, respectfully prays that this Court enter judgment on its behalf and against Defendants Todd A. Smith and Smith Lacien LLP as follows:

A. That Plaintiff, Arwa & Change Advocates LLP be awarded actual, compensatory and consequential damages for the breach of contract claim.

B. That Plaintiff Arwa & Change Advocates LLP be awarded actual and compensatory damages for the unjust enrichment claim against Todd A. Smith and Smith Lacien LLP, jointly and severally.

C. That Plaintiff Arwa & Change Advocates LLP be awarded actual and compensatory damages for the promissory estoppel claim against Todd A. Smith and Smith Lacien LLP, jointly and severally.

D. That Plaintiff Arwa & Change Advocates LLP be awarded actual and compensatory damages for the quantum meruit claim against Todd A. Smith and Smith Lacien LLP, jointly and severally.

E. That Plaintiff Arwa & Change Advocates LLP be awarded appropriate relief on its claim for adjudication of equitable lien against Todd A. Smith and Smith Lacien LLP, jointly and severally.

F. That Plaintiff Arwa & Change Advocates LLP be awarded any and all appropriate relief under the circumstances, including reasonable attorneys' fees and litigation expenses.

Respectfully Submitted

/s/ Eric Onyango
Eric Onyango
Prime Legal, LLC
222 North Columbus Drive #1507
Chicago, IL 60601
312-315-8568
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, Eric Onyango, an attorney, certify that on July 21, 2025, I filed the foregoing document with the Court using the electronic filing system, which will cause service to all counsel of record.

/s/ Eric Onyango

Eric Onyango

Counsel for Plaintiff