**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ARWA & CHANGE ADVOCATES, LLP,

      Plaintiff,

      v.

SMITH LACIEN, LLP, and TODD A. SMITH,

      Defendants.

No. 24 CV 6620

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

This case is an attorneys' fee dispute arising from litigation over an airplane crash in Ethiopia. In its third amended complaint, Kenyan law firm Arwa & Change Advocates, LLP brings five common-law claims against Illinois law firm Smith LaCien, LLP, and one of its partners, Todd A. Smith. Defendants now move to dismiss the complaint. For the following reasons, the Court deems defendants' motion to dismiss as timely and then grants it in part and denies it in part.

## I.    Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

To survive a Rule 12(b)(6) motion, the complaint must allege facts sufficient to state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint's "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When testing the complaint's sufficiency, the Court assumes that the facts alleged in the operative complaint are true and draws all reasonable inferences from those facts in the plaintiff's favor (as it does in the section that immediately follows). *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). But it need not assume the truth of "allegations in the form of legal conclusions." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II.     Factual Background

In 2019, a Boeing 737 Max 8 crashed in Ethiopia shortly after taking off on a flight to Nairobi, Kenya. [94] ¶ 7. Around two months later, Francis Yongi Muturi, the father of a woman killed in the crash, *id.* ¶ 7, engaged Arwa & Change Advocates, LLP ("ACA"), a law firm based in Nairobi, Kenya, *id.* ¶ 3, to represent him in a lawsuit against Boeing. *Id.* ¶ 8. Because Boeing was headquartered in Chicago, ACA decided that the suit should be filed in Illinois. *Id.* ¶ 10. It thus arranged to represent Muturi as co-counsel with a Chicago law firm, Power Rogers & Smith, on a contingency-fee basis. *Id.* ¶ 11. The fees were to be split equally between the two firms. *Id.* ¶ 13. Soon after, Power Rogers & Smith, with ACA, filed Muturi's lawsuit

in the Northern District of Illinois, and the case was consolidated with others related to the same plane crash. *Id.* ¶ 14.

About a year later, attorney Smith left Power Rogers & Smith to form a new firm, Smith LaCien LLP ("LaCien"). *Id.* ¶ 15. Smith asked ACA to convince Muturi to drop Power Rogers and engage LaCien in exchange for half of any fees earned in the engagement. *Id.* ¶ 16. ACA orally agreed (the "oral referral agreement") and successfully convinced Muturi. *See id.* ¶¶ 16, 28. Muturi dropped Power Rogers and agreed in writing to retain LaCien and ACA as co-counsel in exchange for contingency fees, to be split equally between the two firms. *Id.* ¶¶ 18, 21.

ACA represented Muturi as co-counsel with LaCien until February 2022. *Id.* ¶ 22. By that time, ACA had spent at least 2,470 hours working on Muturi's case. *Id.* ¶ 24. Its work included factual and legal research, liaising with Muturi, and participating in settlement discussions. *Id.* ¶ 22.

About a year after the end of ACA's representation, Muturi's case settled for an amount more than five million dollars. *See id.* ¶¶ 23, 25. Defendants kept the entire contingency fee, *id.* ¶ 25, and ACA sued them to recover a portion, [1].

In its third amended complaint, ACA asserts five common-law claims: (1) breach of oral contract; (2) unjust enrichment; (3) promissory estoppel; (4) quantum meruit; and (5) adjudication of equitable lien. [94] ¶¶ 27–57. Seventeen days after ACA filed the current iteration of its complaint, defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [94], [96]. ACA complained that the motion was untimely, [103] at 4–6, and

3

defendants filed a motion for an extension of time to respond to ACA's third amended complaint, [104]. Now before the Court are defendants' motions to dismiss, [96], and for an extension of time, [104].

## III. Analysis

### A. Motion for an Extension of Time

Because the timeliness of defendants' motion to dismiss is a threshold issue, the Court addresses defendants' motion for an extension of time first. In so doing, the Court denies ACA's request that the Court deny Defendants' motion to dismiss as untimely. [103] at 4–6.

A response to an amended pleading "must be made … within 14 days after service of the amended pleading." Fed. R. Civ. P. 15(a)(3). But the Court may extend that deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Whether neglect is "excusable" is an equitable determination, "taking account of all relevant circumstances," including (1) "the danger of prejudice to the defendant"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reasons for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Here, ACA filed its third amended complaint on July 21, 2025, [94], so defendants' response, either by answer or by motion, was due 14 days later, on August 4, 2025. *See* Fed. R. Civ. P. 15(a)(3). Defendants filed their motion to dismiss on

August 7, 2025, three days late. [96]. ACA has not identified any substantial prejudice that it suffered because of the three-day delay. *See* [103] at 5–6. Nor did the delay have any impact on judicial proceedings. Indeed, the Court had previously scheduled a status hearing for August 14, 2025, [95], and Defendants filed their motion to dismiss with enough time for the Court to review it before the hearing and set a briefing schedule at the hearing, [99]. Finally, defendants represent that the delay was the result of a calendaring error, [104] ¶ 4, but they acted in good faith by filing the motion within hours of discovering the error, *id.* ¶ 5. Thus, although the late filing was due to defendants' neglect, that neglect was excusable.

The Court therefore grants defendants' motion for an extension of time, rendering defendants' motion to dismiss timely.

### B.    Motion to Dismiss

Defendants say that ACA's complaint should be dismissed because of what they describe as a violation of the Illinois Rules of Professional Conduct. [97] at 5–12. They also say that the complaint does not allege facts plausibly supporting ACA's unjust enrichment claim. *Id.* at 12–13. The Court addresses each argument in turn.

#### 1.    Illinois Rule of Professional Conduct 1.5

Defendants argue that ACA's complaint should be dismissed because, they believe, ACA violated Rule 1.5(f) of the Illinois Rules of Professional Conduct. [97] at 5. The argument is as follows: *First*, under Illinois law, contracts that violate Rule 1.5(f) of the Illinois Rules of Professional Conduct are unenforceable as against public policy, and parties to those contracts forfeit any right to recovery based on them. *Id.* at 7–10. *Second*, ACA's oral referral agreement violated Rule 1.5(f). *Id.* at 10–11.

*Third*, all of ACA's claims stem from its illicit oral referral agreement. *Id. Therefore*, ACA has forfeited any right to recovery on its claims. *Id.* at 11.

ACA disagrees. It says that defendants' argument fails because ACA's attorneys aren't governed by the Illinois Rules of Professional Conduct, [103] at 10–11; the oral referral agreement isn't governed by Illinois law, [103] at 6–8; and unenforceability as against public policy is an affirmative defense that ACA is not required to negate in its complaint, [103] at 11–12.

The Court assumes for the sake of argument that ACA's attorneys are governed by the Illinois Rules of Professional Conduct and that the oral referral agreement is governed by Illinois law.[1] "[U]nder Illinois law, contravention of public policy, also known as illegality, is an affirmative defense to a breach of contract claim." *Driscoll Firm, LLC v. Fed. City L. Grp., PLLC*, No. 22 CV 1536, 2024 WL 245215, at *3 (N.D. Ill. Jan. 23, 2024). "A plaintiff 'need not anticipate or refute potential affirmative defenses'" in a complaint. *Kass v. PayPal Inc.*, 75 F.4th 693, 699 (7th Cir. 2023) (quoting *Luna-Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022)). Indeed, "dismissal at the [pleading] stage based on an affirmative defense is generally inappropriate unless 'the factual allegations in the complaint unambiguously establish all the elements of the defense.'" *Am. Alliance for Equal Rights v. Am. Bar Ass'n*, No. 25-CV-3980, 2026 WL 161596, at *9 (N.D. Ill. Jan. 21, 2026) (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023)).

---

[1] Defendants argue in their reply brief that the Illinois Rules of Professional Conduct do apply to ACA's attorneys, [110] at 3–8, but they offer no argument as to why Illinois law should govern the alleged oral contract between LaCien and ACA.

Defendants' contention therefore cannot stand unless the facts in ACA's complaint "unambiguously establish" that ACA violated Rule 1.5(f) of the Illinois Rules of Professional Conduct. *Am. Alliance for Equal Rights*, 2026 WL 161596, at *9. Under Rule 1.5(f), lawyers in different firms may only divide fees if "the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing." Ill. R. Prof'l Conduct R. 1.5(f)(2) (2023).[2] Illinois courts have construed this rule as requiring a written client agreement not only to the share each lawyer will receive but also to "the basis for the division, including the respective responsibility to be assumed" by each lawyer. *See, e.g.*, *Donald W. Fohrman & Assocs., Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, ¶ 35, 7 N.E.3d 807, 816 (quoting *In re Storment*, 786 N.E.2d 963, 974 (Ill. 2002)).

Defendants contend that the facts alleged in the complaint establish a violation of those requirements. [110] at 8–10. They assert that the oral referral agreement, [94] ¶¶ 16, 28, violated Rule 1.5(f) because that rule "required such agreement to be in writing," [110] at 8. But Rule 1.5(f) does not require the lawyers' agreement with each other to be in writing; it requires the client's agreement to the arrangement be in writing. *See* Ill. R. Prof'l Conduct R. 1.5(f)(2). That the agreement between ACA and LaCien was unwritten does not "unambiguously establish" that Muturi never gave written agreement to the arrangement. *Am. Alliance for Equal Rights*, 2026 WL

---

[2] Rule 1.5 was adopted in 2009 and amended in 2023. The amendment did not change the substance of Rule 1.5(f), but, prior to the 2023 amendment, it was found at Rule 1.5(e). M.R. 3140 (Ill. Mar. 1, 2023).

161596, at *9. Nor does the fact that ACA, LaCien, and Muturi executed a written contract that does not mention the oral referral agreement. [103-1].

Defendants also note that the complaint does not allege that Muturi ever agreed in writing to the arrangement, [110] at 9, but that is beside the point. The complaint does not have to "anticipate or refute potential affirmative defenses" to plausibly state a claim. *Kass*, 75 F.4th at 699. Defendants' argument requires them to clear a high bar, and they have not done so.

### 2.    Unjust Enrichment

Defendants next ask the Court to dismiss ACA's unjust enrichment claim. They contend that ACA seeks in that claim to recover contingency fees that defendants received from Muturi, but the complaint does not plausibly allege unjust enrichment based on benefits received from a third party. [97] at 12–13. ACA argues that it seeks recovery not of fees that defendants received from Muturi but of benefits that defendants received from ACA—namely, "access to Mr. Muturi and legal services that it provided"—or "half the attorney's fees that Defendants received from the Wrongful Death case." [103] at 15.

8

The Court previously dismissed the unjust enrichment claim in ACA's second amended complaint for the reasons now argued by defendants, among others.[3] [93] at 12–13. The unjust enrichment claim in ACA's third amended complaint is not meaningfully different from the previously dismissed claim. *See* [94-1] ¶¶ 61–67. If anything, the newly amended claim is even more unequivocal in seeking a benefit received from a third party. Indeed, despite ACA's protests to the contrary, [103] at 14–15, defendants are correct that the claim seeks recovery of "a substantial amount of money" that "Smith and LaCien collected" from Muturi "and wrongfully kept." [94] ¶¶ 37, 39; [94-1] ¶ 37 (adding the word "collected" in the third amended complaint). Thus, as in its second amended complaint, ACA has failed to plausibly allege a claim for unjust enrichment.

To the extent ACA seeks recovery of the value of the referral and legal services that defendants received from ACA (and not a third-party), [103] at 15, its unjust enrichment claim is duplicative of its quantum meruit claim, [94] ¶ 48, and is, in any event, barred, [93] at 13 ("When a client terminates a contingency fee contract, the

---

[3] The Court's previous dismissal relied on cases explicating Illinois law. *See* [93] at 12. In the briefing preceding that dismissal, ACA did not contest the applicability of Illinois law vis-à-vis its unjust enrichment claim. *See* [81] at 8. But ACA now says that it "does not concede" that Illinois law applies to its unjust enrichment claim. [103] at 14. Under Illinois's choice-of-law rules, "[i]t is up to the party seeking to apply the law of another state … to demonstrate a conflict between the substantive law it wants applied and the law of the forum state." *Tindall Corp. v. Mondelez Int'l, Inc.*, 248 F. Supp. 3d 895, 904 (N.D. Ill. 2017) (citing *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14, 10 N.E.3d 902, 905). ACA does not, however, identify any differences between Illinois law and the law of any other jurisdiction that might bear on this claim. *See* [103] at 6–8 (discussing differences in Illinois law and Kenyan law only with respect to breach-of-contract claims). Whatever choice-of-law argument it attempts to make as to this claim is therefore underdeveloped and need not be considered by the Court. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020).

'discharged attorney may recover only under a theory of quantum meruit.'" (quoting

*Layden v. Chi. Title Land Tr. Co. as Tr. of Chi. Title Land Tr. Co. Tr. No. 8002362712*,

2024 IL App (2d) 230007, ¶ 38, 249 N.E.3d 1026, 1036)).

As ACA has had ample opportunity to state a plausible claim for unjust

enrichment but has failed to do so, Count II is dismissed with prejudice. *See, e.g.*,

*Anderson v. United Airlines, Inc.*, 140 F.4th 385, 387 (7th Cir. 2025).

## IV. Conclusion

For the foregoing reasons, the Court grants defendants' motion for an

extension of time, [104], and grants in part and denies in part defendants' motion to

dismiss, [96]. Count II is dismissed with prejudice; Counts I, III, IV, and V may

proceed.

The Court refers this matter to the assigned Magistrate Judge for purposes of

discovery scheduling and supervision and to conduct a settlement conference, as

necessary. This Court will set any schedule on summary judgment briefs following

the completion of discovery and an in-chambers summary judgment conference.


ENTER:

_____
Georgia N. Alexakis
United States District Judge

Date: 3/16/2026